Leanna M. Anderson (SBN 228271)
leanna.anderson@dentons.com
DENTONS US LLP
100 Crescent Court, Suite 900
Dallas, Texas 75201
Tel: 214 259 0972 / Fax: 214 259 0910

Natalie Limber (SBN 304252)
natalie.limber@dentons.com
Andrew D. Telles Wyatt (SBN 316740)
andrew.wyatt@dentons.com
Andrew Gerson (SBN 341531)
andrew.gerson@dentons.com
Dominick M. Jaffe (SBN 347898)
dominick.jaffe@dentons.com
DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, California 90017
Tel: 213 623 9300 / Fax: 213 623 9924

Keith Moskowitz (*Pro Hac Vice*)
keith.moskowitz@dentons.com
233 South Wacker Drive Suite 5900
Chicago, IL 60606-6361
Tel: 312 876 8000 / Fax: 312 876 7934

*Attorneys for AIG Specialty Insurance Company*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

CEDARS-SINAI MEDICAL CENTER, a California nonprofit public benefit corporation,

Plaintiff,

v.

AIG SPECIALTY INSURANCE COMPANY, an Illinois corporation, and IRONSHORE SPECIALTY INSURANCE COMPANY, an Arizona corporation,

Defendants.

Case No.: 2:24-cv-02543-SRM-RAO

**DEFENDANTS' NOTICE OF MOTION AND MOTION TO PARTIALLY EXCLUDE THE EXPERT TESTIMONY OF JONATHAN GREIN**

Trial Date: January 26, 2027
Action Filed: February 9, 2024
Removed: March 28, 2024

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that Defendants AIG Specialty Insurance Company ("ASIC") and Ironshore Specialty Insurance Company ("Ironshore") move to partially exclude the expert testimony of Plaintiff Cedars-Sinai Medical Center's expert Dr. Jonathan Grein under Federal Rule of Evidence 702.

This Motion is made on the grounds that Dr. Grein's opinions regarding the interpretation of terms in the subject insurance policy, the interpretation of whether particular laws or regulatory guidance "required" Cedars to undertake certain actions, and what was "necessary to investigate, remove, abate, remediate and/or monitor" COVID-19 are impermissible legal conclusions, speculative, and well outside the reasonable scope of Dr. Grein's expertise.

This Motion is made following the conference of counsel under Local Rule 7-3, which took place on September 29, 2026.

No hearing is requested at this time. The Motion is based on this Notice, the accompanying Memorandum of Points and Authorities, the supporting declaration and exhibits, and the pleadings and records on file.

Dated: October 14, 2026

**DENTONS US LLP**

By: */s/ Natalie Limber*

Leanna M. Anderson
Natalie Limber
Andrew D. Telles Wyatt
Andrew Gerson
Dominick M. Jaffe

*Attorneys for Defendant*
*AIG Specialty Insurance Company*

# I. INTRODUCTION

Plaintiff Cedars-Sinai Medical Center ("Cedars") seeks to have its own Director of Hospital Epidemiology, Jonathan Grein ("Dr. Grein"), serve as a legal analyst to opine on, and interpret, the AIG Specialty Insurance Company ("ASIC") environmental insurance policy at issue in this matter (the "ASIC Policy") and dozens of purported "Environmental Laws / governmental guidance on the cleanup of COVID-19." (Cedars Expert Disclosure ["Disclosure"]; *See also* Dkt. 327, JAE 61, ["Grein Decl."]). Specifically, Dr. Grein is expected to offer opinions as to whether particular laws or regulatory guidance "required" Cedars to undertake certain actions. Ignoring the clear conflict of interest, Dr. Grein does not have legal education or experience to support the legal analysis offered in his opinions. Regardless, it is improper for an expert to interpret and analyze the law or regulations, or to apply the ASIC Policy's terms to facts. These legal questions are reserved for the Court.

Defendants ASIC and Ironshore Specialty Insurance Company ("Ironshore") (together, "Defendants") jointly seek to prohibit Dr. Grein from testifying at trial as to what constitutes an "Environmental Law," what the Centers for Disease Control ("CDC"), local health agencies, state health agencies, and any other agency purportedly "required" of hospitals, and what, if any, requirements or mandates Cedars purportedly complied with. Dr. Grein's opinions interpreting those documents, the ASIC Policy, and whether the documents constitute legal requirements or laws is improper, speculative, and inadmissible expert testimony. Defendants respectfully request the Court grant this Joint Motion to limit Dr. Grein's testimony as described herein.

# II. BRIEF FACTUAL BACKGROUND

## A. ASIC Policy

The ASIC Policy covers "Clean-Up Costs" "[t]o the extent required by Environmental Laws" or "[w]ith respect to viruses or bacteria, as defined by the Center for Disease Control, in the absence of Environmental Laws, to the extent

required in writing by the Center for Disease Control or local health department." (Dkt. 327, JAE 1 at AIGSpecialty-Cedars000052.) "Clean-Up Costs" means the "reasonable and necessary expenses" for the "investigation, removal, abatement, remediation" "or disposal of" a contaminant. (*Id.*)

**B. Cedars Disclosure for Dr. Grein**

Cedars disclosed Dr. Grein as an expert under Federal Rule of Civil Procedure 26(a)(2)(C) as follows, in full:

> Jonathan D. Grein, M.D. Infectious disease expert. May be contacted through counsel. Dr. Grein will provide expert testimony regarding Cedars-Sinai's infectious disease response to COVID-19, including (a) remedial measures (such as disinfection, personal protective equipment, COVID test kits, vaccine supplies, and screening and safety measures) that were necessary to investigate, remove, abate, remediate and/or monitor SARS-CoV-2 contamination; (b) compliance with Environmental Laws / governmental guidance on the cleanup of COVID-19 (including Title 22 of the California Code of Regulations, the California Department of Industrial Relations' California Workplace Guide to Aerosol Transmissible Diseases, and guidance from the Centers for Disease Control, California Department of Public Health, Los Angeles County Department of Public Health, among others).

(Disclosure.) In other words, Dr. Grein is described as an "infectious disease expert" who will offer two categories of expert opinions: (1) what was "necessary to investigate, remove, abate, remediate and/or monitor" COVID-19 and (2) various "environmental laws /governmental guidance" on COVID-19 including what was required or necessary for compliance.

**C. Dr. Grein's Summary Judgment Declaration**

Cedars offered Dr. Grein's declaration in support of its motion for summary judgment to testify as to Cedars' "policies, protocols, and procedures for responding to the spread of SARS-CoV-2 on the hospital grounds throughout the pandemic." (Dkt. 327, JAE 61, ["Grein Decl."].)

However, Dr. Grein not only testified as to Cedars' procedures, but he also opined on "written guidelines from the Center for Diseases Control and Prevention ("CDC"), the California Division of Occupational Safety and Health ("Cal/OSHA"), and local health departments." (*Id.* at ¶¶ 5-6, 11-12.) These opinions involve Dr. Grein's interpretation of "guidance from the CDC" and what was purportedly legally "required" of hospitals. *Id*. Indeed, Dr. Grein attached an "Exhibit A" with 63 different "regulatory guidance" documents where he purported to interpret and summarize these documents, together with their legal implications.

Then in the Joint Appendix of Facts, Cedars cited to Dr. Grein's declaration as evidence that "Cedars-Sinai was required to follow" certain guidelines. (*See* JAF No. 444.) For example, Cedars argued that "telehealth services" were "mandated" while citing solely to Dr. Grein's affidavit and a guideline that does not "require" telehealth, but rather explains that "Telehealth services can be used to: screen patients who may have symptoms of COVID-19 and refer as appropriate" as well as serve dozens of non-COVID related services like "provide coaching and support for patients managing chronic health conditions" and "participate in physical therapy, occupational therapy," and "provide non- emergent care to residents in longterm care facilities. (*See* JAF No. 444, Response.)

**D. Dr. Grein's Deposition Testimony**

Dr. Grein testified at deposition that he intends to offer opinions related to California Work Place standards and what those standards obligate of health care workers. (Limber Decl., Ex. H ["Grein Dep. Trans."], at 103:6-104:9.) He also intends to "speak to the guidance issued by the CDC specific to health care facilities and their infection prevention response efforts" including as to "testing recommendations, treatment recommendations, exposure management recommendations," and "other guidance [the CDC] put out." (*Id*. at 106:4-107:5.)

## III. ARGUMENT

### A. Dr. Grein's Opinions on CDC "Recommendations" Are Impermissible Legal Conclusions and Legal Interpretation

Cedars cannot shoehorn its legal arguments regarding the interpretation of the ASIC Policy's definition of Clean-Up Costs into the "expert" opinion of Dr. Grein. Nor can Cedars repackage recommendations as legal requirements or mandates by putting an expert gloss on them. "[I]nstructing the jury as to the applicable law 'is the distinct and exclusive province' of the court." *Hangarter v. Provident Life & Acc. Ins. Co.,* 373 F.3d 998, 1016 (9th Cir. 2004) (citations omitted). "[T]he interpretation of the insurance policy is a question of law for the court." *McHugh v. United Serv. Auto. Ass'n*, 164 F.3d 451, 454 (9th Cir. 1999). Expert testimony "cannot be used to provide legal meaning or interpret the policies as written." *Id*. Likewise, an "expert's interpretations of statutes and regulations and whether a party violated those laws are 'statements of the law and legal conclusions' that 'should be excluded.'" *GemCap Lending, LLC v. Quarles & Brady, LLP*, 269 F. Supp. 3d 1007, 1029 (C.D. Cal. 2017), *aff'd sub nom. GemCap Lending I, LLC v. Quarles & Brady, LLP*, 787 F. App'x 369 (9th Cir. 2019); *see also Wells Fargo Bank, N.A. v. LaSalle Bank Nat. Ass'n*, No. 2:08-CV-1448 JCM RJJ, 2011 WL 588471, at *2 (D. Nev. Feb. 9, 2011) (excluding expert testimony purporting to interpret a statute and opine on whether it was violated).

The ASIC Policy requires Cedars to prove it incurred "Clean-Up Costs" as required by "Environmental Laws" as defined in the ASIC Policy. Attempting to circumvent this pure legal question, Cedars offers Dr. Grein to opine on whether an unspecified series of so-called "environmental laws / governmental guidance" (including 63 documents referenced in summary judgment) legally mandated the costs that Cedars claims from its insurers. (Grein Decl. ¶¶ 5, 6, 7; Grein Depo. at 107:9-109:9.) These opinions are a further example of Cedars' efforts to inject its

counsel's legal arguments into the case as expert "opinion" testimony. Specifically, Dr. Grein is anticipated to offer opinions at trial including:

- What constitutes "compliance" with certain laws, regulations, or guidance materials including specific "requirements" of those documents (Disclosure);
- That the CDC and other regulatory bodies "provided the standard of care for COVID response";
- That the CDC's guidance documents were "informed by principles of epidemiology and the medical community's evolving understanding of the SARS-CoV-2 virus and COVID-19";
- That "[h]ospitals are [] required to follow requirements from state and local public health agencies and Cal/OSHA requirements";
- That there are "63 different CDC publications provided COVID-related guidance" mandating specific actions from Cedars;
- And that "[f]ollowing these CDC and other governmental guidelines required Cedars-Sinai to incur substantial costs across a range of categories."

(Grein Decl. ¶¶ 5, 6, 7.)

These opinions are textbook examples of an expert's impermissible application of law to fact that courts protect against as offering them at trial requires Dr. Grein to provide legal conclusions as to what constitutes a "requirement," both generally and under the ASIC Policy's plain terms. *GemCap Lending, LLC*, 269 F. Supp. 3d at 1029; *Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1059 (9th Cir. 2008) (upholding district court's exclusion of an expert witness on contract law who opined on the opposing party's obligation to follow provisions of the Uniform Commercial Code). Further concerning is Dr. Grein's deposition testimony directly contradicts his opinions, showing exactly why courts do not allow experts to offer such opinions. For example, Dr. Grein testified that while the CDC

puts out guidance documents, those are "recommendations" that most hospitals, including Cedars, "then do their best to follow." (*Id*. at 107:16-21.)

Defendants seek to preclude Dr. Grein from offering testimony interpreting "guidance documents" and suggesting that these documents "required" anything of Cedars, let alone that they "required" Cedars incur covered "Clean-Up Costs." The law does not permit him to offer improper legal conclusions regarding the referenced documents or the ASIC Policy.

**B. Dr. Grein's Opinions on "Guidance Documents" are Speculative**

Dr. Grein's anticipated testimony regarding the publishing agency's or office's intent, interpretation, and application is also speculative. Dr. Grein appears to interpret these documents, all of which on their face state they contain (at most) recommendations, as instead being "requirements" a hospital must follow. Such baseless speculative opinions are inadmissible. "Expert testimony as to intent, motive, or state of mind offers no more than the drawing of an inference from the facts of the case." *Munoz v. PHH Mortg. Corp*., No. 108CV00759MMBBAM, 2022 WL 138670, at *4 (E.D. Cal. Jan. 14, 2022). It is for the jury, not an expert, to ascribe motive, intent, and state of mind to a document. *Id*. (citing S*iring v. Or. State Bd. of Higher Educ. ex rel. E. Or. Univ*., 927 F. Supp. 2d 1069, 1077 (D. Or. 2013)). Dr. Grein's opinions improperly ascribe motive, purpose, and intent absent from the face of these documents, attempting to transform them from "guidance" documents offering suggested procedures for handling COVID-19 into edicts that "required Cedars-Sinai to incur substantial costs." (Grein Decl. ¶ 7.)

Dr. Grein also does not have personal knowledge to testify to the CDC's, or another entity's, intent. Dr. Grein works as a hospital director at Cedars. (Grein Decl. ¶ 1.) He did not work for the CDC, or other entities, when these documents were issued, was not involved in their creation, and has no basis to infer their intent, purpose, or meaning. Fed. R. Evid. 602. Opinions that the CDC's guidance documents were "informed by principles of epidemiology and the medical

community's evolving understanding of the SARS-CoV-2 virus and COVID-19" or "required" hospitals to take certain action are speculative. (Grein Decl. ¶¶ 5, 6, 7.) Further, Dr. Grein does not provide any basis for interpreting the "recommendation," "guidance," or other permissive language (i.e., "should" and "may") in the referenced documents as generally accepted in the medical field as mandating conduct with the force of law. *See Daubert v. Merrell Dow Pharms., Inc*., 509 U.S. 579, 583 (1993) (scientific evidence is admissible only if the principle upon which it is based is sufficiently established to have general acceptance in the field to which it belongs).

Defendants seek to preclude Dr. Grein from testifying that any "environmental laws / governmental guidance" including 63 documents referenced in summary judgment were intended to serve as legal directives, or otherwise bind hospitals with the effect of law, as such opinions are speculative and foundationless. *Siring v. Oregon State Bd. of Higher Educ. ex rel. E. Oregon Univ*., 927 F. Supp. 2d 1069, 1078 (D. Or. 2013).

**C. Dr. Grein's Testimony and Opinions on What Constitutes Abatement is Similarly Inadmissible**

In addition to his improper opinions relating to "Environmental Laws," Dr. Grein makes regular use of the term "abatement," and offers opinions that all of Cedars' policies and procedures for handling COVID-19 were aimed at "abating the generalized and ongoing spread of the SARS-CoV-2 virus on-site and within the population." (Grein Decl. ¶ 4.) The term "abate" and "abatement" is in the definition of "Clean-Up Costs" in the ASIC Policy, and what constitutes abatement for purposes of satisfying this definition is a legal question pending before this Court.

An expert may not instruct a jury on the meaning of terms as used within an insurance policy or statute. *Nationwide Transp. Fin*., 523 F.3d at 1059; *Hangarter*, 373 F.3d at 1016.

### D. Dr. Grein Does Not Have the Experience or Education to be a Legal or Policy Interpretation Expert

Any argument from Cedars that such opinions are within Dr. Grein's expertise and not otherwise excluded is disingenuous. Cedars disclosed Dr. Grein as an "infectious disease" expert, which in no way qualifies him to offer opinions on the legal obligations of parties or state legal conclusions even if such testimony was not clearly prohibited. *Avila v. Willits Env't. Remediation Tr.*, 633 F.3d 828, 839 (9th Cir. 2011) (precluding opinions based on lack of qualification when expert offered opinions beyond "the reasonable confines of his subject area"); *Crow Tribe of Indians v. Racicot*, 87 F.3d 1039, 1045 (9th Cir. 1996) (precluding opinion interpreting the meaning of certain terms in a contract as "[e]xpert testimony is not proper for issues of law.").

Testimony from Dr. Grein interpreting laws, "governmental guidance" or policy terms is improper, far outside the confines of his "infectious disease" expertise, and will only serve to confuse the jury. Defendants request this Court preclude Dr. Grein from offering opinions that Cedars' alleged creation of policies and procedures to "abate" instances of SARS-CoV-2 on its property is conduct within the ASIC Policy's definition of "Clean-Up Costs." *Acad. of Motion Pictures Arts & Scis. v. GoDaddy.com, Inc.*, No. CV 10-3738 ABC (CWx), 2013 WL 12122803, at *2 (C.D. Cal. June 21, 2013) (excluding expert testimony, reasoning "[e]xpert testimony is also subject to relevance or prejudice considerations under Rules 401-403") (collecting cases)).

## IV. <u>CONCLUSION</u>

For all of the reasons described, this Court should issue an order precluding and excluding improper testimony and legal conclusions on Cedars' purported "guidance" documents and interpretation of the ASIC Policy from Dr. Grein at trial.

Dated: October 14, 2026

**DENTONS US LLP**

By: */s/Natalie Limber*
Leanna M. Anderson
Natalie Limber
Andrew D. Telles Wyatt
Andrew Gerson
Dominick M. Jaffe

*Attorneys for Defendant*
*AIG Specialty Insurance Company*

**DUANE MORRIS LLP**

Dated: October 14, 2026

By: */s/Max H. Stern*
Max H. Stern
Timothy J. Witczak

*Attorneys for Defendant Ironshore Specialty Insurance Company*

**ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-4.3.4**

In accordance with Civil Local Rule 5-4.3.4, I attest that concurrence in the filing of this document has been obtained from the other signatories, which shall serve in lieu of their signatures on the document.

Dated: October 14, 2026

DENTONS US LLP

By: */s/Natalie Limber*
Natalie Limber

*Attorneys for Defendant AIG Specialty Insurance Company*