# EXHIBIT H

**In the Matter Of:**

Cedars-Sinai v AIG Specialty Insurance

2:24-cv-02543-SRM-RAO

---

**JONATHAN GREIN, M.D.**

*May 02, 2025*

---

ESQUIRE
DEPOSITION SOLUTIONS
800.211.DEPO (3376)
EsquireSolutions.com

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

CEDARS-SINAI MEDICAL CENTER,
a California nonprofit public
benefit corporation,
Plaintiff,
v. Case No. 2:24-cv-02543-SRM-RAO
AIG SPECIALTY INSURANCE COMPANY,
an Illinois corporation,
Defendant.

VIDEOCONFERENCE DEPOSITION OF

JONATHAN GREIN, M.D.

May 2, 2025

9:01 a.m.

Stenographically Reported by:
Bonnie Pruszynski, RMR, CA CSR No. 13064
Job No. J12740604

May 2, 2025
9:01 a.m.

VIDEOCONFERENCE DEPOSITION OF JONATHAN GREIN, M.D., before Bonnie Pruszynski, CA Certified Shorthand Reporter No. 13064, a Registered Merit Reporter, Certified Livenote Reporter, and Notary Public of the States of New York and Florida.

APPEARANCES:

Counsel for the Plaintiff, Cedars-Sinai Medical Center:

VORA LAW FIRM, P.C.
201 Santa Monica Blvd., Suite 300
Santa Monica, CA 90401
By: David Russell, Esq.
and
LATHAM & WATKINS LLP
10250 Constellation Blvd., Suite 1100
Los Angeles, CA 90067
By: Rachel Mitchell, Esq.

Counsel for Defendant AIG Insurance Company:
DENTONS US LLP
601 South Figueroa Street
Suite 2500
Los Angeles, California 90017
By: Leanna Anderson, Esq.
Andrew Gerson, Esq.

APPERANCES Continued:

Counsel for Defendant Ironshore Specialty Insurance Co.:

KAUFMAN BORGEEST & RYAN LLP

200 Summit Lake Drive, 1st Floor

Valhalla, NY 10595

By: Daniel Lewkowicz, Esq.

Also Present:

Mike Cooper, Videographer

THE VIDEOGRAPHER: We are going on the record at 9:01 a.m. on May 2nd, 2025. This begins the videoconference deposition of Dr. Jonathan Grein, M.D., taken in the matter of Cedars-Sinai Medical Center versus AIG Specialty Insurance Company, in the United States District Court for the Central District of California, Case Number 2:24-cv-02543.

My name is Mike Cooper. The court reporter is Bonnie Pruszynski, and we represent Esquire Deposition Solutions.

Would all counsel present please introduce yourselves and whom you represent.

MS. ANDERSON: Yes. This is Leanna Anderson on behalf of AIG Specialty Insurance, and we're the noticing party.

MR. RUSSELL: David Russell appearing for the plaintiff Cedars.

MR. GERSON: Andrew Gerson with Denton for AIG Specialty.

MS. MITCHELL: And Rachel Mitchell with Latham & Watkins, also on behalf of Plaintiff Cedars-Sinai.

THE VIDEOGRAPHER: Thank you.

Will the court reporter please swear in

the witness.

(Witness sworn.)

MS. ANDERSON: I think we just had someone join, so I want to make sure we --

MR. LEWKOWICZ: Yes. My apologies. This is Daniel Lewkowicz, Kaufman Borgeest & Ryan, on behalf of Ironshore.

MS. ANDERSON: Well, you just timely joined. We just swore in the witness and just got appearances.

MR. LEWKOWICZ: Great. Thanks so much.

JONATHAN GREIN, M.D.,

called as a witness, having been first duly sworn, was examined and testified as follows:

EXAMINATION

BY MS. ANDERSON:

Q. Good morning, Dr. -- I believe it's Grein. Do I have that right?

A. Yes, you have that correct. Thank you. Good morning.

Q. Thank you.

Would you please go ahead and state and spell your name for the record?

A. Sure. Jonathan Grein. J-O-N-A-T-H-A-N.

A. As I understand it, Title 22 was written in the 1970s, so it is not specific to COVID-19. Again, it just provides general infection control requirements. That would not be the bulk of where we got our guidance for the COVID-19 response.

Q. Let's see if we can then move forward. So, what is the expert testimony that you intend to provide at trial with respect to Cedars-Sinai's infectious disease response to COVID-19 as it relates to compliance with environmental laws and government guidance on the cleanup of COVID-19 with respect to the California Department of Industrial Relations' California Workplace Guide to Aerosol Transmissible Diseases?

A. The California Workplace Guide to Aerosol Admissible Diseases is specifically referring to Cal/OSHA's 5199 aerosol transmissible diseases standard, which includes responses to novel respiratory pathogens, of which we understood Cal/OSHA interpreted COVID-19 to fall under.

And this standard is specific to health care worker safety requirements, specifically PPE that should be used, for example, for what are considered high-risk procedures or

aerosol-generating procedures, and specifically the need for use of respirators when providing care to patients suspected or confirmed to have an aerosol transmissible disease.

In addition, it also provides requirements around respirator fit testing and exceptions that could be made in the -- with regard to disruptions in supply chain with respirators. So, there's several aspects to that.

Q. When Cedars was developing its infectious disease response to COVID-19, did Cedars consult the California Department of Industrial Relations' California Workplace Guide to Aerosol Transmissible Diseases?

A. If you're asking if we consulted with Cal/OSHA, which is the agency that puts that out, then no, not to my understanding. There was not a direct consultation to Cal/OSHA.

Q. Did you go back and look at the regulations themselves, the Cal/OSHA regulations, to make sure that your policies and procedures complied with them?

MR. RUSSELL: Objection. Vague and ambiguous.

THE WITNESS: Yes, in general.

Tuchmayer. I cannot recall if some of the other people were working there at the time. I'm thinking of people that are currently there now.

Q. So, let's move on to Cedars-Sinai's infectious disease response -- your expert testimony that you intend to offer at trial with respect to Cedars-Sinai's infectious disease response to COVID-19: Compliance with environmental laws and governmental guidance on the cleanup of COVID-19, as related to the Centers for Disease Control.

What expert testimony do you intend to provide on that topic?

A. I can speak to the guidance issued by the CDC specific to health care facilities and their infection prevention response efforts to patients infected with COVID-19, as well as for testing recommendations, treatment recommendations, exposure management recommendations, masking and universal source control recommendations, and other guidance they put out.

Q. Did the CDC put out guidance specific to removing the SARS-CoV-2 virus from the hospital?

A. I would say the CDC guidance refers to

guidance for infection prevention control, including disinfection of surfaces, PPE, as well as for the diagnosis and treatment of patients. You can argue that all of those helped to reduce the burden of virus within the hospital.

Q. Within the hospital and within the community?

A. Sure.

Q. Were any of the -- we talked about, and I think you mentioned specifically CDC guidance. Were any of the guidance that the CDC was putting out required? Was Cedars required to follow any of the CDC guidance with respect to the COVID-19 pandemic?

MR. RUSSELL: Objection. Vague.

A. In general, the CDC issues recommendations, and most hospitals, including ourselves, then do their best to follow those recommendations in most circumstances. So, not a formal requirement from the CDC, but that is general guidance that hospitals follow.

BY MS. ANDERSON:

Q. Okay. Could you also tell me about the expert testimony that you intend to provide at trial regarding Cedars-Sinai's infectious disease

response to COVID-19 as it relates to compliance with environmental laws and governmental guidance on the cleanup of COVID-19 and the California Department of Public Health?
A. Sure. The California Department of Public Health issued numerous guidance documents, but also hospital requirements in the form of all facility letters. These were issued multiple times for COVID-19 beginning in 2020. These all facility letters covered a wide variety of hospital-specific issues. The ones that come to mind would be requirements or guidance around infection control measures to follow for patients infected with COVID-19. Also with regards to health care worker monitoring for symptoms of COVID-19, testing, exposure management, and return-to-work guidance or requirements.
Q. I want to make sure that I'm hearing you right. Are you saying all facility letters? Is the first word "all"?
A. Oh, sorry. All facility letters. AFL. That's what they're called.
Q. I'm sorry. A --
A. -- FL.
Q. And the California Department of Health

was issuing those to all health care facilities, not just specific to Cedars; is that correct?
A. Correct.
Q. And did these AFLs that you talked about that were being issued by the California Department of Public Health, did those impact the policies and procedures that Cedars-Sinai developed with respect to COVID-19?
A. Yes.
Q. And I believe you listed them off for me. They set forth requirements around infection control, testing, health care monitoring. I think I wrote something else down but I can't read my own handwriting.
A. Return to work for health care workers.
Q. So, that covered a broad range of topics with respect to the COVID-19 pandemic; right?
A. I would say so, yes.
Q. All right. What expert testimony do you intend to offer at trial regarding Cedars-Sinai's infectious disease response to COVID-19, including compliance with environmental laws, government guidance on the cleanup of COVID-19, with respect to the Los Angeles County Department of Public Health?

C E R T I F I C A T E

I, Bonnie Pruszynski, RPR, RMR, do hereby certify that on May 2, 2025. appeared before me, JONATHAN GREIN, M.D..

I further certify that the said witness was first duly sworn to testify to the truth in the cause aforesaid.

I further certify that the signature of the witness to the foregoing deposition was not specified by counsel.

I further certify that I am not counsel for nor in any way related to any of the parties to this suit, nor financially interested in the action.

IN WITNESS WHEREOF, I have hereunto set my hand this 4th of May , 2025.

Bonnie A Pruszynski

______________________________

Bonnie Pruszynski