Max H. Stern
MHStern@duanemorris.com
Timothy J. Witczak
TWitczak@duanemorris.com
Duane Morris LLP
Spear Tower
One Market Plaza, Suite 2200
San Francisco, California 94105-1127
Telephone: +1 415 957 3000
Facsimile: +1 415 957 3001

*Attorneys for Defendant*
*Ironshore Specialty Insurance Company*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

CEDARS-SINAI MEDICAL CENTER, a California nonprofit public benefit corporation,

Plaintiff,

v.

AIG SPECIALTY INSURANCE COMPANY, an Illinois corporation, and IRONSHORE SPECIALTY INSURANCE COMPANY, an Arizona corporation,

Defendants.

Case No. 2:24-cv-02543-SRM-RAO

**DEFENDANTS' NOTICE OF MOTION AND MOTION TO EXCLUDE THE EXPERT TESTIMONY OF JAMES SCHRATZ**

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that Defendants Ironshore Specialty Insurance Company ("Ironshore") and AIG Specialty Insurance Company ("ASIC") move to exclude the expert testimony of Plaintiff Cedars-Sinai Medical Center's ("Cedars") expert James Schratz under Federal Rule of Evidence 702.

This Motion is made on the grounds that Mr. Schratz's opinions regarding claims-handling "principles" drawn from California statutes, regulations, and case law, and regarding whether Ironshore had a duty to monitor ASIC's claim handling, are impermissible legal conclusions that would instruct the jury on the law and assert a duty no California authority recognizes, and that his remaining opinions regarding investigation, pretext, and fees are speculative and lack a reliable basis or relevant experience.

This Motion is made following the conference of counsel under Local Rule 7-3, which took place on September 29, 2026.

No hearing is requested at this time. The Motion is based on this Notice, the accompanying Memorandum of Points and Authorities, the supporting declaration and exhibits, and the pleadings and records on file.

Dated: October 14, 2026

**DUANE MORRIS LLP**

By: */s/ Timothy J. Witczak*
Max H. Stern
Timothy J. Witczak

Dated: October 14, 2026

**KAUFMAN BORGEEST & RYAN**

By: */s/ Brian Margolies*
Brian Margolies

*Attorneys for Defendant*
*Ironshore Specialty Insurance Company*

Dated: October 14, 2026

**DENTONS US LLP**

By: */s/ Natalie Limber*
Leanna M. Anderson
Natalie Limber
Andrew D. Telles Wyatt
Andrew Gerson
Dominick M. Jaffe

*Attorneys for Defendant*
*AIG Specialty Insurance Company*

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendants Ironshore Specialty Insurance Company ("Ironshore") and AIG Specialty Insurance Company ("ASIC") move to exclude the expert testimony of James Schratz under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

## INTRODUCTION

Cedars retained James Schratz to opine that ASIC (the primary insurer) and Ironshore (the excess insurer) violated fifteen claims-handling "principles." Those "principles" are California statutes and regulations repackaged as industry standards, but an expert may not instruct the jury on the law through a report that reads like a legal brief. If Mr. Schratz testifies, the jury would hear two sets of instructions on California law, one from the Court and one from Mr. Schratz. To hold Ironshore responsible under those principles, Mr. Schratz opines that Ironshore, as the excess carrier, had a duty to ensure ASIC complied with the law and handled the claim properly. No California authority imposes that duty on an excess carrier, and defining legal duties is the province of the Court, not an expert.

Mr. Schratz's other opinions fare no better. His criticisms of the insurers' investigation reflect his personal view of what the policy should require, but not any experience in the relevant line of insurance. The documents he reviewed contradict his opinion that Ironshore failed to investigate. He disclaims any coverage opinion, yet characterizes the insurers' coverage positions as pretextual. His fee opinion is a bare conclusion. Because each of these opinions fails Rule 702's reliability requirements, the Court should exclude Mr. Schratz's testimony.

## STATEMENT OF FACTS

### A. Mr. Schratz's Report

Cedars retained Mr. Schratz to offer opinions on the claims handling of its COVID-19 contamination claim by ASIC, which issued Cedars a primary pollution legal liability policy, and Ironshore, which issued a follow-form excess policy.

(Schratz Dep. Ex. 55 ("Schratz Rpt.") at 1, 4.) Mr. Schratz worked at Fireman's Fund Insurance Company from August 1980 to December 31, 1993. (Schratz Dep. 49:6-13.) Since January 1994, he has worked as a consultant and expert witness. (Schratz Rpt. ¶ 8.)

According to Mr. Schratz, under the fifteen principles he presents as industry standard for claims handling, a carrier "must conduct a full, fair, thorough and prompt investigation of the claim at its own expense" and "must not misrepresent facts or policy provisions." (*Id.* at 3.) Further, "the duty of good faith and fair dealing continues into litigation with the insured." (*Id.* at 4.) Mr. Schratz then opines that ASIC and Ironshore "failed to meet a number of these standards." (*Id.*)

Opinion No. 9 is directed at Ironshore alone. It states that "Ironshore failed to conduct its own coverage investigation to assure itself that the position taken by [ASIC] was reasonable." (*Id.* at 6.) Mr. Schratz acknowledges that he is "aware of excess carriers taking the position that they are entitled to rely on the primary carrier to conduct the coverage investigation." (*Id.*) He nonetheless concludes that "[a]n excess carrier should conduct its own coverage investigation to protect both its and the insured's interest." (*Id.*)

The report states that Mr. Schratz is "not giving any opinions on whether there is coverage under the insurance policy." (*Id.*) It also states that he is not giving "an opinion on an ultimate issue such as whether the carrier acted in bad faith." (*Id.*)

**B. Mr. Schratz's Deposition**

Defendants deposed Mr. Schratz on May 5, 2025, and the deposition continued on May 16, 2025. He testified that his "main focus is on whether Ironshore met the industry standard for proper claims handling." (Schratz Dep. 12:2-6.)

Mr. Schratz tied several of his principles directly to California law. Asked what he relied on for his opinion that an insurer must send status letters every 30 days, he answered that "[t]hat statement was based on the regs and statute here in

California" and identified section 2695.7. (*Id.* 62:16-21.) He described the equal consideration standard as "basic California law under Egan." (*Id.* 48:4-16.) He relied on "the *Great American* case" for the rule that the duty of good faith and fair dealing "continues into litigation." (*Id.* 100:21-101:8.)

Mr. Schratz conceded that he has no opinion on whether the ASIC policy covers preventative measures. (*Id.* 95:23-96:4.) He conceded that he has no opinion on whether Cedars demonstrated a sufficient nexus between pollution conditions and its claimed cleanup costs. (*Id.* 97:22-98:17.) He nonetheless described the insurers' documentation request as a "granularity requirement" that "was impossible to meet." (*Id.* 130:15-25.) Asked whether the documentation met his own requirement, he answered, "I don't have a requirement." (*Id.* 131:2-7.)

## LEGAL STANDARD

Federal Rule of Evidence 702 permits expert testimony only if it will "help the trier of fact to understand the evidence or to determine a fact in issue." The expert's opinion must be "based on sufficient facts or data," must be "the product of reliable principles and methods," and must "reflect[] a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702(a)-(d).

The trial court acts as a gatekeeper to ensure that expert testimony is both relevant and reliable. *Daubert*, 509 U.S. at 589. The proponent of the expert testimony bears the burden of establishing admissibility. *Lust v. Merrell Dow Pharms., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996). That burden is met by a preponderance of the evidence. *Daubert*, 509 U.S. at 592 n.10.

An expert may not offer opinions on the legal obligations of parties or state legal conclusions. *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004); *Crow Tribe of Indians v. Racicot*, 87 F.3d 1039, 1045 (9th Cir. 1996). Such opinions are improper and inadmissible because they invade the province of the Court and do not assist the jury.

Further, an expert opinion is unreliable if it rests on factual assumptions that the record does not support. *Guidroz-Brault v. Missouri Pac. R.R. Co.*, 254 F.3d 825, 830-31 (9th Cir. 2001); *Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 861 (9th Cir. 2014). The expert must explain the basis for his opinion with enough specificity that the court can determine whether the opinion has a reliable foundation. *Claar v. Burlington N. R.R. Co.*, 29 F.3d 499, 502 (9th Cir. 1994); *see also Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1319 (9th Cir. 1995) (experts must "explain precisely how they went about reaching their conclusions").

## ARGUMENT

### I. MR. SCHRATZ'S "FIFTEEN PRINCIPLES" ARE CALIFORNIA'S CLAIMS-HANDLING STATUTES REPACKAGED AS INDUSTRY STANDARDS, AN IMPERMISSIBLE INSTRUCTION ON THE LAW

Mr. Schratz's fifteen "principles" are not industry customs he observed in the field. They are duties California imposes by statute, specifically the Unfair Insurance Practices Act, Cal. Ins. Code § 790.03(h), and the Fair Claims Settlement Practices Regulations, 10 C.C.R. §§ 2695.3-2695.7, repackaged as his own standards. An expert "cannot give an opinion as to her legal conclusion, i.e., an opinion on an ultimate issue of law," because instructing the jury on the law "is the distinct and exclusive province" of the Court. *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004).

When a report "merely states rules of law" and "reads like a legal brief," the Court must strike opinions from that expert and bar testimony on the prohibited topics. *Evanston Ins. Co. v. Enter. Plan B, Inc.*, 839 F. Supp. 3d 833, 848 (N.D. Cal. 2026) (quoting *Haas v. Travelex Ins. Servs. Inc.*, 679 F. Supp. 3d 962, 967 (C.D. Cal. 2023)). And an opinion on "insurance industry custom and practice" that is "indistinguishable from ... legal conclusions" is "also improper." *Haas*, 679 F. Supp. 3d at 968.

Here, Mr. Schratz's opinions are improper because his "principles" track the statutory language or decisions from California courts.

- Principle 1, "equal regard," derives from the common-law standard in *Egan v. Mutual of Omaha Insurance Co.*, 24 Cal. 3d 809 (1979), which is cited as authority for section 2695.7.
- Principle 2, "assist the policyholder," restates section 2695.5(e)(2), which implements section 790.03(h)(2), and section 2695.4(a).
- Principle 3, "disclose all benefits, coverages and time limits," restates section 2695.4(a).
- Principle 4, "full, fair, thorough and prompt investigation," restates section 790.03(h)(3) and section 2695.7(d).
- Principle 5, "fully, fairly and promptly evaluate and adjust the claim," restates section 790.03(h)(3), (h)(4) and section 2695.7(b).
- Principle 6, "pay all amounts not in dispute," restates section 2695.7(h).
- Principle 7, "may not deny based on insufficient information or speculation," tracks the investigation duty in section 2695.7(d) and the documented-basis requirement in section 2695.7(b)(1), and otherwise reflects standards developed by California courts.
- Principle 8, "written explanation for denials," restates section 790.03(h)(13) and section 2695.7(b)(1).
- Principle 9, "must not misrepresent facts or policy provisions," restates section 790.03(h)(1) and section 2695.4(a).
- Principle 10, "may not make unreasonably low settlement offers," restates section 2695.7(g).
- Principle 11, "duty to act in good faith," restates section 790.03(h)(5).
- Principle 12, "duty not to unreasonably withhold payments," restates section 790.03(h)(5) and section 2695.7(h).
- Principle 13, "good faith continues into litigation," is attributed by Mr. Schratz to *Great Am. Ins. Co. v. Superior Court*, 178 Cal. App. 4th 221 (2009).

- Principle 14, "open candor and transparency," repackages section 790.03(h)(1) (no misrepresentation) and (h)(13) (explain denial).
- Principle 15, "properly document its actions," restates section 2695.3.

The above rules limiting expert testimony apply here. First, Mr. Schratz's testimony that Ironshore "did not comply with the regs" is an opinion that a party violated the law, which is exactly the legal conclusion *Hangarter* forbids. (Schratz Dep. 309:22-310:14.) Second, a list of fifteen paraphrased statutory duties, each tied to a code section or a California decision, "reads like a legal brief" under *Evanston*. Third, calling those duties "industry standards" does not save them, because a custom and practice opinion that is "indistinguishable from ... legal conclusions" is improper under *Haas*. And unlike the expert in *Hangarter*, whose statutory references were ancillary to his opinion, 373 F.3d at 1017, Mr. Schratz uses the statutes as the opinion itself. The Court should exclude his fifteen "principles" and any testimony applying them.

## II. MR. SCHRATZ'S OPINION THAT IRONSHORE HAD A DUTY TO ENSURE ASIC COMPLIED WITH THE LAW IS IMPERMISSIBLE AND CONTRARY TO CALIFORNIA LAW

The heart of Mr. Schratz's opinion against Ironshore is that Ironshore, as the excess carrier, had a duty to monitor ASIC's handling of the claim and ensure ASIC complied with the law. He testified that "the excess owes a duty both to itself and to the insured to make sure that the primary is doing a proper investigation," because "if [ASIC] breaks it, Ironshore owns it." (Schratz Dep. 264:11-20.) This opinion should be excluded for two reasons.

First, this opinion is an impermissible legal conclusion. Mr. Schratz is telling the jury that Ironshore had a legal duty to police ASIC's conduct. But whether an excess carrier owes such a duty is a question of law for the Court, not a question of fact for the jury. An expert's role is to interpret and analyze factual evidence and not to testify about the law. *Crow Tribe*, 87 F.3d at 1045.

Second, California law is contrary to Mr. Schratz's opinion. No California court has ever found an excess carrier such as Ironshore has a duty to supervise, monitor, or ensure the primary carrier's compliance with the law. *Cont'l Cas. Co. v. Royal Ins. Co.*, 219 Cal. App. 3d 111, 119 (1990) ("There is no authority that holds an excess carrier should be charged with making sure the primary carrier fulfills its good faith obligations to the insured."). In fact, California courts have found precisely the opposite. *Id.* (affirming exclusion of evidence that excess carrier "failed to participate and monitor" the primary carrier's acts, "including evidence of industry custom and practices").

Mr. Schratz nonetheless testified that Ironshore had a "definite obligation" to challenge ASIC's coverage decisions, that an excess carrier "[a]bsolutely" must "monitor the primary insurer's investigation," and that Ironshore "owns" ASIC's conduct "by not properly supervising [ASIC]." (Schratz Dep. 245:3-21, 316:6-14, 263:19-264:9.) That is the very duty *Continental* declined to impose. 219 Cal. App. 3d at 119.

Where an expert's opinion rests on "erroneous statements of law," the testimony is "not only superfluous but mischievous," and "a party is not entitled to present evidence on an erroneous or inapplicable legal theory to the jury." *Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1058-59, 1063 (9th Cir. 2008). Because California imposes no duty on an excess carrier to police the primary, this opinion should be excluded.

## III. MR. SCHRATZ'S OPINIONS ARE UNRELIABLE SPECULATION ABOUT WHAT THE POLICY SHOULD REQUIRE

Mr. Schratz's primary criticism of the insurers is that they demanded an unreasonable level of "granularity" in the nexus between the pollution conditions and the claimed cleanup costs. He testified that the insurers' request for documentation connecting specific costs to specific pollution conditions was "impossible to meet" and reflected an "unreasonable granularity." (Schratz Dep.

111:4-19, 130:15-25.)

Mr. Schratz's testimony is that the insurers first imposed this requirement on Cedars in 2025. However, his testimony is contradicted by the record. Mr. Schratz testified that the granularity issue was first raised at the depositions of the insurers' adjusters in January 2025. (*Id.* 153:24-154:7.) But when shown an October 10, 2023 email from ASIC's coverage counsel asking Cedars to "provide information sufficient to establish which alleged Clean-Up Costs were incurred in response to each positive test," he conceded that it was a request for the granularity he criticizes. (*Id.* 163:2-164:9.)

Mr. Schratz could not identify what standard the insurers should have applied. Asked whether the documentation met his own requirement, he answered, "I don't have a requirement." (*Id.* 131:2-7.) And as shown in Section IV below, he has no experience with the line of coverage at issue. His opinion is *ipse dixit*. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

In short, Mr. Schratz says ASIC asked for too much documentation, but he cannot say how much would have been enough. That is speculation, not expertise.

His other standards are no better. For Opinion No. 4, he would require insurers to "[a]ct like a human being, show some compassion," relying on no regulation or industry source. (*Id.* 174:18-175:7, 176:19-177:7.) For Opinion No. 6, his standard that the carrier act as the insured's "advocate" rests on "the purpose of insurance," his personal experience, and a time "[a] tree fell on our house." (*Id.* 199:2-200:21.) And for Principle 2, he looked up the dictionary definition of "assist." (*Id.* 152:7-14, 158:8-14.) A dictionary entry and a homeowner's anecdote are not a method. *Joiner*, 522 U.S. at 146.

## IV. MR. SCHRATZ IS NOT QUALIFIED TO OPINE ON THE HANDLING OF A COVID-19 CLAIM UNDER CLAIMS-MADE ENVIRONMENTAL POLICIES

Rule 702 permits opinion testimony only from a witness "qualified as an expert by knowledge, skill, experience, training, or education." Fed. R. Evid. 702.

General experience in the insurance industry does not qualify a witness to opine on the standards governing a specialized line of coverage. *Certain Underwriters at Lloyds, London v. Inlet Fisheries, Inc.*, 389 F. Supp. 2d 1145, 1152-54 (D. Alaska 2005) (excluding witness with forty-five years of insurance experience who lacked "particularized experience with vessel pollution policies").

Mr. Schratz's experience with the coverage at issue here is thinner than the witness's in *Inlet*. He has never handled or investigated a COVID-19 claim. (Schratz Dep. 270:17-21.) He has never testified at trial in an environmental or pollution case. (*Id.* 28:3-16.) He has never provided expert or consulting services on a claim under a pollution legal liability policy, and the environmental matters he has worked on involved only CGL or excess policies. (*Id.* 58:15-59:1.) Before this case, he had never reviewed a claim file under a pollution liability policy, much less one involving first-party coverage. (*Id.* 224:8-23.) At Fireman's Fund, he handled no environmental or first-party claims as Director of Corporate Litigation or in the Major Litigation Unit, and as Vice President he supervised environmental claims only "at a high level, but not boots on the ground adjuster." (*Id.* 34:6-22, 35:2-6.) Ironshore's policy is a claims-made excess environmental impairment liability policy. (Schratz Dep. Ex. 88 at 11.) Mr. Schratz admitted that he does "not know how other carriers on pollution liability policies have investigated," because COVID-19 was "such a unique experience" for everyone involved, including himself. (Schratz Dep. 227:6-15.)

Asked whether he had any basis to compare how carriers handle pollution liability claims, Mr. Schratz responded that "the standards do not vary depending on the type of policy." (Schratz Dep. 226:11-14.) That is the kind of generalization from broad industry experience that Rule 702 does not permit. Without particularized experience, his opinions on what a pollution liability insurer should have done on a novel COVID-19 contamination claim are speculation, and presenting them with an expert's credentials would mislead the jury. Fed. R. Evid.

403; *Daubert*, 509 U.S. at 595. The Court should exclude his claims handling opinions on this ground alone.

## V. MR. SCHRATZ'S OPINIONS ABOUT IRONSHORE ARE CONTRADICTED BY THE RECORD HE REVIEWED

Mr. Schratz's opinions about Ironshore are not "based on sufficient facts or data." Fed. R. Evid. 702(b). He identified only three documents from Ironshore's production, and he conceded that his conclusion that Ironshore looked for ways to deny coverage rests on "the absence of certain information in the Ironshore file." (Schratz Dep. 230:9-17, 268:20-269:4.)

The documents Mr. Schratz did review contradict his central Ironshore opinion, that Ironshore "failed to conduct its own coverage investigation." (Schratz Rpt. at 5-6.) Cedars tendered its claim on or about May 18, 2020. (*Id.* at 4.) Two days later, Ironshore sent Cedars a written request for information about the affected locations, confirmed COVID-19 cases, regulatory reporting, and disinfection expenses. (Schratz Dep. Ex. 21; Schratz Dep. 236:13-237:4.) On July 6, 2020, Ironshore issued a reservation of rights letter. (Schratz Dep. Ex. 59; Schratz Dep. 233:9-16, 247:22-25.) In April 2022, Ironshore closed its file because the reported costs would not reach its excess layer. (Schratz Dep. Ex. 88 at 15; Schratz Dep. 254:20-255:5.) When Cedars announced in September 2022 that the ASIC layer was exhausted, Ironshore's adjuster contacted ASIC within two days, identified Ironshore's coverage counsel, and asked for ASIC's coverage correspondence "so that Ironshore can complete our coverage investigation and continue to evaluate exposure to our excess policy." (Schratz Dep. Exs. 62, 100; Schratz Dep. 311:24-312:4.) ASIC has not paid its limits. (Schratz Dep. 276:6-10.) And in January 2024, Cedars's own broker acknowledged "that Ironshore has not denied coverage at this time." (Schratz Dep. Ex. 88 at 14.) Mr. Schratz reviewed each of these documents.

Confronted with this record, Mr. Schratz conceded that he is not saying Ironshore conducted no investigation. (Schratz Dep. 267:9-22.) An opinion that an insurer failed to investigate, contradicted by the very records the expert reviewed, rests on insufficient facts and data. *See Guidroz-Brault*, 254 F.3d at 831-32 ("the underlying facts must exist"); *see also 11333 Inc. v. Certain Underwriters at Lloyd's, London*, 261 F. Supp. 3d 1003, 1030-31 (D. Ariz. 2017) (excluding bad-faith expert whose opinions "lack[ed] basis in sufficient facts and data").

Mr. Schratz also admits that the record could undermine his opinions. He conceded that the absence of criticism in Ironshore's file is consistent with the file being handled properly, answering that "anything is possible." (*Id.* 294:11-17.) And he testified that he would "change, alter, or amend" his opinions if shown documents he had not seen. (*Id.* 252:8-13.) An opinion drawn from a silent record that the expert concedes is equally consistent with proper conduct is *ipse dixit*. *Joiner*, 522 U.S. at 146. The Court should exclude his opinions that Ironshore looked for ways to deny coverage, failed to conduct its own investigation, failed to supervise its claims handlers, and failed to document its file.

## VI. HAVING DISCLAIMED ANY COVERAGE OPINION, MR. SCHRATZ CANNOT TELL THE JURY THAT THE INSURERS' COVERAGE POSITIONS WERE UNREASONABLE OR PRETEXTUAL

Many of Mr. Schratz's criticisms are simply characterizations of the insurers' coverage positions. The coverage positions he criticizes were taken by ASIC, which partially denied the claim in April 2021 and maintained that position through counsel in May 2021. (Schratz Dep. Exs. 16, 58.) Ironshore, as the excess carrier, reserved its rights pending ASIC's position and presentment of a claim reaching Ironshore's excess layer. (Schratz Rpt. at 4; Schratz Dep. Ex. 88 at 15.) He accuses the insurers of "looking for ways to deny coverage" and of failing to conduct an investigation aimed at "confirming coverage." (Schratz Rpt. at 5; Schratz Dep. 133:7-23, 198:17-20, 265:10-21.) Whether a coverage position was pretextual or

unreasonable depends on whether the position had merit. Mr. Schratz has expressly declined to address that question.

His report states that he is "not giving any opinions on whether there is coverage under the insurance policy." (Schratz Rpt. at 6.) He has no opinion on whether the policy covers preventative measures. (Schratz Dep. 95:23-96:4.) He has no opinion on whether Cedars demonstrated a sufficient nexus between pollution conditions and its claimed cleanup costs. (*Id.* 97:22-98:17.) And asked whether he had any opinion on the reasonableness of ASIC's denial of coverage for preventative measures, he answered, "No." (*Id.* 184:21-185:1.)

Having disclaimed any view on whether the insurers' coverage positions were correct, Mr. Schratz has no basis to tell the jury those positions were a search for reasons to deny coverage. An expert opinion that rests on unsupported assumptions is unreliable. *Guidroz-Brault*, 254 F.3d at 830-31. And a court need not admit opinion evidence "connected to existing data only by the *ipse dixit* of the expert." *Joiner*, 522 U.S. at 146. The Court should exclude his opinions that the insurers looked for ways to deny coverage or that their coverage positions were unreasonable.

At a minimum, any claims handling testimony should be conditioned on a coverage determination. Mr. Schratz's criticisms matter only if benefits were owed, and when "the relevance of evidence depends on whether a fact exists," the Court may admit it only on proof of that fact. Fed. R. Evid. 104(b). If the Court admits any of his claims handling opinions, the Defendants request that it do so only after coverage is established and with an instruction that the jury may consider the testimony only if it first finds that benefits were due. *See* Fed. R. Evid. 105.

## VII. MR. SCHRATZ'S ONE-PARAGRAPH FEE OPINION IS CONCLUSORY, UNSUPPORTED, AND NOT PROPER REBUTTAL

Cedars also offers Mr. Schratz to testify that its attorney fees are recoverable and reasonable under *Brandt v. Superior Court*, 37 Cal. 3d 813 (1985). (Schratz

Dep. 12:2-11.) That opinion appears in a single paragraph of a letter dated March 31, 2025, which was the initial deadline for rebuttal expert opinions. (Declaration of Natalie Limber ("Limber Decl.") (Dkt. No. 336-1) ¶ 14, Ex. L.) To be clear, Mr. Schratz does not rebut any defense expert on the issue of fees. At the time of Mr. Schratz's fee opinion, neither Defendant had disclosed a fee expert. (*Id.* ¶ 15.) Defendant ASIC has since disclosed a fee expert, John O'Connor, who opines regarding the allocation of fees between recoverable *Brandt* fees related to Cedars's contract claims and unrecoverable fees related to Cedars's prosecution of its bad faith claim. (*Id.* ¶ 16.) Schratz's fee opinion is untimely and should be barred on that basis alone. *See Huawei Techs., Co., Ltd. v. Samsung Elecs. Co., Ltd.* 340 F. Supp. 3d 934, 996 (N.D. Cal. 2018) (rebuttal evidence must contradict, impeach, or defuse the impact of evidence offered by an adverse party). Mr. Schratz's March 31 letter states that, based on his review of invoices and his experience, "these legal fees are reasonable, particularly in light of the size of the dispute and Defendants' inconsistent and unreasonable coverage positions." (Schratz Dep. Ex. 56.) The letter identifies no time entries, rates, hours, or amounts. Most significantly, it makes no attempt to separate fees incurred to recover contract benefits from fees incurred on the tort and punitive damages claims. That allocation is the central inquiry under *Brandt*, because only fees attributable to obtaining the policy benefits are recoverable. A fee opinion that skips it does not provide any probative testimony on the question the jury must decide. And it does not address the block billing or unrelated entries that Mr. Schratz testified he had not yet finished analyzing. (Schratz Dep. 14:22-16:23.)

The deposition is now closed, and that analysis never appeared. At least one court has discounted the opinions of this same witness where he failed to present supporting time entries, considering his declaration only when accompanied by specific factual support. *See Lopez v. San Francisco Unified Sch. Dist.*, 385 F. Supp.

2d 981 (N.D. Cal. 2005). A bare conclusion untethered to the billing records is *ipse dixit*. *Joiner*, 522 U.S. at 146. The Court should exclude the fee opinion.

## CONCLUSION

Mr. Schratz's "fifteen principles" are taken from California law. His opinion that Ironshore had a duty to police ASIC contradicts that law. His investigation criticisms rest on his personal view of what the policy should require. He has no experience with the claims-made environmental coverage at issue. His Ironshore opinions are contradicted by the record. Having disclaimed any coverage opinion, he cannot call the insurers' coverage positions pretextual. And his fee opinion is a conclusion without analysis.

Defendants respectfully requests that the Court exclude Mr. Schratz's expert testimony in its entirety or, in the alternative, exclude the specific opinions identified above and condition any remaining claims handling testimony on a coverage determination.

Dated: October 14, 2026

**DUANE MORRIS LLP**

By: */s/ Timothy J. Witczak*
Max H. Stern
Timothy J. Witczak

Dated: October 14, 2026

**KAUFMAN BORGEEST & RYAN**

By: */s/ Brian Margoles*
Brian Margolies

*Attorneys for Defendant*
*Ironshore Specialty Insurance Company*

Dated: October 14, 2026

**DENTONS US LLP**

By: */s/ Natalie Limber*
Leanna M. Anderson
Natalie Limber
Andrew D. Telles Wyatt
Andrew Gerson

Dominick M. Jaffe
*Attorneys for Defendant*
*AIG Specialty Insurance Company*