Max H. Stern
MHStern@duanemorris.com
Timothy J. Witczak
TWitczak@duanemorris.com
Duane Morris LLP
Spear Tower
One Market Plaza, Suite 2200
San Francisco, California 94105-1127
Telephone: +1 415 957 3000
Facsimile: +1 415 957 3001

*Attorneys for Defendant*
*Ironshore Specialty Insurance Company*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

CEDARS-SINAI MEDICAL CENTER, a California nonprofit public benefit corporation,

Plaintiff,

v.

AIG SPECIALTY INSURANCE COMPANY, an Illinois corporation, and IRONSHORE SPECIALTY INSURANCE COMPANY, an Arizona corporation,

Defendants.

Case No. 2:24-cv-02543-SRM-RAO

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO EXCLUDE THE EXPERT TESTIMONY OF JAMES SCHRATZ**

## INTRODUCTION

James Schratz, Plaintiff Cedars-Sinai Medical Center's ("Cedars") retained expert, seeks to offer opinions about Defendant Ironshore Specialty Insurance Company ("Ironshore") that rest on an erroneous legal theory. Asked whether an excess insurer has a duty to challenge or police the primary insurer's handling of the claim, Mr. Schratz testified:

> I don't use the word "duty" but under industry standards giving equal consideration to Ironshore's interest, let me give you an example. . . . Ironshore has a definite obligation under equal consideration to call up AIG and say "What are you doing? We're challenging you. That's wrong."

(Schratz Dep. 245:3-21.) Later, he stated his opinions even more clearly:

> [T]he excess owes a duty both to itself and to the insured to make sure that the primary is doing a proper investigation or else, as I said a couple minutes ago, if AIG breaks it, Ironshore owns it.

(*Id.* 264:11-20.)

California law rejects that obligation. *Cont'l Cas. Co. v. Royal Ins. Co.*, 219 Cal. App. 3d 111, 119 (1990). Cedars' opposition never discusses *Continental* and says only that Mr. Schratz does not use the word "duty." (Opp'n at 8.) His testimony shows otherwise. Mr. Schratz may not tell the jury that Ironshore owed an obligation California law does not recognize. *Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1058-59, 1063 (9th Cir. 2008).

Mr. Schratz's report suffers from a second, independent defect that warrants exclusion of his opinions as to both AIG Specialty Insurance Company ("ASIC") and Ironshore. It seeks to instruct the jury on the law. *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004); *Crow Tribe of Indians v. Racicot*, 87 F.3d 1039, 1045 (9th Cir. 1996). The report is, in effect, a legal brief that dresses opinions that Ironshore breached legal obligations in the trappings of custom and practice. He testified repeatedly that Ironshore "did not comply with the

regs" or some other legal obligation. (Schratz Dep. 101:5-8, 309:22-310:14.) This is improper.

Cedars' remaining arguments fare no better and leave much of Mr. Schratz's testimony undefended. Cedars ignores that the records Mr. Schratz reviewed contradict his Ironshore opinions. Nor does it defend his "compassion," "tree fell on our house," and dictionary standards. And it seeks more time to complete a long-overdue fee analysis. Cedars must establish each Rule 702 requirement by a preponderance of the evidence. Fed. R. Evid. 702 & advisory committee's note to 2023 amendment. It has not done so. These are threshold admissibility defects for the Court, not matters of weight for cross-examination.

## ARGUMENT

### I. MR. SCHRATZ'S OPINIONS AGAINST IRONSHORE ALL REST ON AN OBLIGATION CALIFORNIA LAW REJECTS, AND RELABELING IT AN "INDUSTRY STANDARD" DOES NOT SAVE THEM

Cedars defends Mr. Schratz by saying he will not opine that Ironshore had a "duty" to supervise ASIC, pointing to his statement, "I don't use the word 'duty.'" (Opp'n at 8 (quoting Schratz Dep. 245:3-7).) However, as the testimony above shows, he finished that same answer by saying Ironshore had a "definite obligation" to challenge ASIC, and he later testified outright that "the excess owes a duty" to make sure the primary is doing a proper investigation. (Schratz Dep. 245:3-21, 264:11-20.) He also testified that an excess carrier relying on the primary's investigation "[a]bsolutely" has an "obligation to monitor" it, and that Ironshore "owns" ASIC's conduct "by not properly supervising AIG." (*Id.* 264:2-9, 316:6-14.) Cedars' own description of his opinion is the same. In its telling, an excess insurer must investigate on its own "or at least oversee the primary insurer's investigation to ensure that it follows industry standards," and if it does not, "AIG breaks it, Ironshore owns it." (Opp'n at 2, 8.)

Cedars thus asks the Court to accept that an expert who tells the jury Ironshore had an obligation to monitor, supervise, and challenge ASIC, and that Ironshore "owns" ASIC's failures because it did not, is somehow offering no opinion on Ironshore's duties because he avoided one word. An obligation by any other name is still a duty, and the Court should look to the substance of the opinion, which is that Ironshore was obligated to monitor and supervise ASIC's claim handling and to challenge ASIC when he believes ASIC got it wrong.

California law rejects Mr. Schratz's opinion on this point. *Continental* held that "[t]here is no authority that holds an excess carrier should be charged with making sure the primary carrier fulfills its good faith obligations to the insured," and it affirmed the exclusion of evidence that the excess carrier "failed to participate and monitor" the primary's handling, "including evidence of industry custom and practices." 219 Cal. App. 3d at 119. Cedars does not address *Continental*, or *Nationwide*, which holds that "a party is not entitled to present evidence on an erroneous or inapplicable legal theory to the jury." 523 F.3d at 1058-59, 1063. Whether an excess carrier owes that obligation is a question of law for the Court, *Crow Tribe*, 87 F.3d at 1045, and Mr. Schratz may not give the jury a different answer by calling it custom and practice.

Cedars' opposition concedes this point. It acknowledges that if any standard Mr. Schratz identifies "conflicted with California law," the Court, "as gatekeeper," should keep it from the jury. (Opp'n at 7 n.3.) Mr. Schratz's opinion as to Ironshore's obligations as an excess carrier conflicts with California law under *Continental*, and by Cedars' own measure it must be excluded.

That obligation also underlies every other opinion Mr. Schratz offers against Ironshore. His opinion that Ironshore sought to deny coverage rests on his view that, "by a failure to properly supervise AIG, they were condoning AIG's actions in looking for ways to deny coverage." (Schratz Dep. 265:10-21.) His investigation opinion rests on his view that Ironshore "punted and relied on AIG." (*Id.* 270:8-16.)

His coverage-counsel criticism holds Ironshore "responsible for the manner in which AIG supervised its outside counsel." (*Id.* 263:10-18.) His granularity criticism faults Ironshore for not having "questioned whether this granular approach by AIG" made sense. (*Id.* 270:20-271:13.) And Opinion No. 9 faults Ironshore for failing to investigate "to assure itself that the position taken by AIG was reasonable." (Schratz Rpt. at 6.) Without that obligation, Mr. Schratz has no opinion to offer about Ironshore, and the Court should exclude his testimony.

## II. CEDARS CONCEDES THAT MR. SCHRATZ'S "FIFTEEN PRINCIPLES" TRACK CALIFORNIA LAW, WHICH IS WHY THEY MUST BE EXCLUDED

Mr. Schratz may not offer an expert report that "reads like a legal brief" or testify that Defendants violated California's claims-handling statutes, because such a report must be stricken and the expert barred from testifying on those topics, *Evanston Ins. Co. v. Enter. Plan B, Inc.*, 839 F. Supp. 3d 833, 848 (N.D. Cal. 2026) (quoting *Haas v. Travelex Ins. Servs. Inc.*, 679 F. Supp. 3d 962, 967 (C.D. Cal. 2023)), and may not opine on an ultimate issue of law, *Hangarter*, 373 F.3d at 1016.

Cedars' opposition does not cure that problem. Cedars concedes that Mr. Schratz's fifteen principles are "reflected one way or another in California's regulatory scheme" and argues that no limiting instruction is needed because they "concur" with California regulations. (Opp'n at 6, 7 n.3.) Cedars misses the point and its concession is precisely the problem. Mr. Schratz's opinions as to custom and practice *are* his characterizations of California laws, and he opines that, by breaching those laws, Ironshore's claims handling did not comply with custom and practice. That is true of his 30-day status letter standard, which rests on "the regs and statute here in California," his equal consideration standard, which he calls "basic California law under *Egan*," and his rule that good faith "continues into litigation," which comes from "the *Great American* case," as well as his testimony that Ironshore "did not comply with the regs." (Schratz Dep. 48:4-16, 62:16-21, 100:21-101:8, 309:22-310:14.) That is an opinion on an ultimate issue of law.

*Hangarter* does not help Cedars. The expert there referred to California's claims regulations as background for an opinion about industry norms. 373 F.3d at 1017. Here, the regulations *are* the opinion. Each of the fifteen principles restates a provision of Insurance Code section 790.03(h), the Fair Claims Settlement Practices Regulations, or a California decision (Mot. at 7-9), and Cedars disputes none of this. Cedars says the principles also come from "thousands of claims files" and "Best Practices Guidelines" (Opp'n at 6), yet it identifies no claims manual, guideline, or file that supports any of them.

Cedars' own authority confirms the point. Cedars relies on *Arroyo* for the proposition that Mr. Schratz may testify to industry standards. (Opp'n at 6, 12.) Yet the *Arroyo* court treated equal consideration as a legal doctrine and barred him from "describ[ing] the doctrine as the 'industry standard,'" because the doctrine "exists in other Eleventh Circuit-area states" but there was "no evidence . . . that the doctrine formally applies in Florida." *Estate of Arroyo v. Infinity Indem. Ins. Co.*, No. 15-20548-Civ-COOKE/TORRES, 2016 WL 4506991, at *4 (S.D. Fla. Aug. 29, 2016). A standard that turns on the governing state's law is a legal rule, and Mr. Schratz concedes as much by calling equal consideration "basic California law under *Egan*." (Schratz Dep. 48:4-16.)

*Evanston* confirms exclusion of Mr. Schratz is the proper remedy. The court there allowed testimony about claims-handling norms and struck the opinions that crossed into legal conclusions. 839 F. Supp. 3d at 848-49. Mr. Schratz's statutory principles, and his testimony that Ironshore violated "the regs," are improper. The Court should exclude his fifteen principles and any testimony applying them.

## III. MR. SCHRATZ'S GRANULARITY AND OTHER STANDARDS REST ON NOTHING BUT HIS SAY-SO

Cedars argues that claim granularity "cannot be reduced to a number" and that Mr. Schratz can "recognize" an unreasonable request from "years of experience in the industry." (Opp'n at 9.) In other words, he knows it when he sees it, which is

the definition of *ipse dixit*. Asked whether Cedars' documentation met his own requirement, he answered, "I don't have a requirement." (Schratz Dep. 131:2-7.) A witness relying on experience "must explain how that experience leads to the conclusion reached," and the gatekeeping function "cannot be satisfied by simply taking the expert's word for it." Fed. R. Evid. 702 advisory committee's note to 2000 amendment. *Hangarter*'s emphasis on experience (Opp'n at 3) does not excuse that showing. *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

Cedars also ignores the record. Mr. Schratz testified that the granularity issue first surfaced at the adjusters' depositions in January 2025, then conceded that ASIC's coverage counsel had requested the same information in October 2023. (Schratz Dep. 153:24-154:7, 163:2-164:9.) An opinion built on an abandoned timeline lacks a reliable factual basis. *Guidroz-Brault v. Missouri Pac. R.R. Co.*, 254 F.3d 825, 831 (9th Cir. 2001). Nor does Cedars defend Mr. Schratz's other standards, which require insurers to "[a]ct like a human being, show some compassion," rest on a time "[a] tree fell on our house," and borrow a dictionary definition of "assist." (Schratz Dep. 152:7-14, 158:8-14, 174:18-175:7, 200:2-21.) Those opinions should be excluded.

## IV. MR. SCHRATZ'S ADMISSION IN OTHER CASES DOES NOT QUALIFY HIM TO OPINE ON A COVID-19 CLAIM UNDER CLAIMS-MADE ENVIRONMENTAL POLICIES

Cedars argues that Mr. Schratz is qualified to offer opinions in this case because other courts have admitted his testimony on claims handling. (Opp'n at 1, 4-5.) Those rulings addressed different records and different policies. The question here is whether Mr. Schratz may give these opinions on this record.

Unable to defend Mr. Schratz's opinions on this record, Cedars now argues that because AIG and Liberty Mutual affiliates have retained Mr. Schratz in unrelated matters, Defendants are estopped from seeking to exclude him and breached their duty of candor. (Opp'n at 1-2, 5-6.) Both arguments are meritless. First, the Liberty Mutual engagements appear nowhere in Mr. Schratz's report, and

Cedars did not disclose them until its opposition.[1] Second, judicial estoppel requires that the same party take clearly inconsistent positions and persuade a court to accept the first. *New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001). The engagements Cedars cites were by separate affiliated companies (not Ironshore or ASIC) in unrelated cases. (Schratz Decl. ¶ 2.) And nothing in the duty of candor required Defendants to catalogue his engagement history, which Cedars was free to present.

Cedars' reliance on *Lucas* is misplaced. (Opp'n at 10-11.) By Cedars' own account, *Lucas* admitted Mr. Schratz's testimony on a cancer and dread disease policy because the insurer failed to refute his claim that claims-handling standards are the same across lines. *Lucas v. Tex. Int'l Life Ins. Co.*, 2012 WL 6000306, at *3 (E.D. Okla. Nov. 30, 2012). Here, Mr. Schratz refuted it himself. He testified that "the standards do not vary depending on the type of policy," then conceded that he does "not know how other carriers on pollution liability policies have investigated" these claims. (Schratz Dep. 226:11-14, 227:6-15.) Before this case, he had never reviewed a claim file under any pollution liability policy, such as the ASIC Policy, and Ironshore's policy is a claims-made excess environmental impairment policy. (*Id.* 224:8-23; Schratz Dep. Ex. 88 at 11.) His Fireman's Fund supervision of environmental claims (Opp'n at 5 n.1) was "at a high level, but not boots on the ground adjuster." (Schratz Dep. 34:6-22, 35:2-6.) And as the proponent, Cedars bears the burden of showing he is qualified to opine on this line of coverage, whatever authority Defendants cite. *Lust v. Merrell Dow Pharms., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996).

[1] The two Liberty Mutual engagements in the Schratz Declaration, *McGuire v. Liberty Insurance Corp.* and *OEM Pacific, Inc. v. Liberty Mutual Insurance Co.* (Schratz Decl. ¶ 2(b)-(c)), appear nowhere in his expert report, and Rule 26(e) permits a party to correct an incomplete or incorrect disclosure, not to add new support for an expert's qualifications in response to a *Daubert* motion. Fed. R. Civ. P. 26(a)(2)(B), (e)(1). Information not timely disclosed is excluded under Rule 37(c)(1) unless the failure was substantially justified or harmless, *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001), and Cedars offers no justification.

General insurance experience does not carry that burden for a specialized line. In *Inlet*, the court excluded a witness with forty-five years of insurance experience because he lacked "particularized experience with vessel pollution policies." *Certain Underwriters at Lloyds, London v. Inlet Fisheries, Inc.*, 389 F. Supp. 2d 1145, 1152-54 (D. Alaska 2005). Cedars observes that the *Inlet* witness addressed underwriting (Opp'n at 11), yet the court's concern was the witness's lack of experience with the specific pollution line, and Mr. Schratz has the same gap.

## V. CEDARS DOES NOT RESPOND TO THE RECORD THAT CONTRADICTS MR. SCHRATZ'S IRONSHORE OPINIONS

Defendants showed that the documents Mr. Schratz reviewed contradict his central Ironshore opinion. Ironshore requested information from Cedars two days after tender, issued a reservation of rights, closed its file when reported costs would not reach its layer, and resumed its investigation within two days of Cedars' exhaustion notice. (Mot. at 13; Schratz Dep. Exs. 21, 59, 62, 88, 100.) Mr. Schratz conceded that he is not saying Ironshore conducted no investigation, that his opinion rests on "the absence of certain information" in Ironshore's file, and that the file is consistent with proper handling because "anything is possible." (Schratz Dep. 267:9-22, 268:20-269:4, 294:11-17.)

Cedars' opposition does not address any of this. It cites testimony that Ironshore failed to control its own coverage investigation and relied on ASIC (Opp'n at 8 (citing Schratz Dep. 270:6-16)), which simply restates the monitoring obligation that *Continental* forecloses. An opinion contradicted by the very records the expert reviewed is not "based on sufficient facts or data." Fed. R. Evid. 702(b); *Guidroz-Brault*, 254 F.3d at 831-32. Having offered no response, Cedars has not carried its burden. The Court should exclude Mr. Schratz's opinions that Ironshore looked for ways to deny coverage, failed to conduct its own investigation, failed to supervise its claims handlers, and failed to document its file.

## VI. MR. SCHRATZ'S "CLAIMS HANDLING" CRITICISMS ARE COVERAGE OPINIONS HE DISCLAIMED

Cedars says Mr. Schratz will address only "the claims handling that lead to" coverage determinations and never their correctness. (Opp'n at 11-12.) His report says otherwise. Immediately after disclaiming a coverage opinion, he wrote, "I am stating firmly the positions taken by the carriers are unreasonable." (Schratz Rpt. at 5-6.) His fee letter rests on "Defendants' inconsistent and unreasonable coverage positions." (Schratz Dep. Ex. 56.) And he called ASIC's nexus requirement, itself a coverage position, an "impossible" granularity demand. (Schratz Dep. 130:15-25.) Yet he has no opinion on whether the policy covers preventative measures, whether Cedars established the required nexus, or whether ASIC's denial of coverage for preventative measures was reasonable. (*Id.* 95:23-96:4, 97:22-98:17, 184:21-185:1.)

An expert who declines to say whether a coverage position was right has no basis to tell the jury that the position was unreasonable or a search for reasons to deny. *Guidroz-Brault*, 254 F.3d at 830-31; *Joiner*, 522 U.S. at 146. Cedars' point that contract and bad faith are separate claims (Opp'n at 11) supports Defendants' alternative request, which Cedars does not address. Mr. Schratz's criticisms matter only if benefits were owed. If any of his claims-handling opinions survive, the Court should admit them only upon a coverage determination and with a limiting instruction. Fed. R. Evid. 104(b), 105.

## VII. MR. SCHRATZ'S FEE OPINION MUST BE EXCLUDED

Cedars does not dispute that Mr. Schratz's fee opinion first appeared in a one-page letter served on the rebuttal deadline, that it rebuts no defense expert, or that it makes no attempt to allocate fees between contract and tort claims as *Brandt* requires. (Opp'n at 12-13.) Its only answer on timeliness is a lack of prejudice. Under Rule 37(c)(1), however, the party that failed to make a proper disclosure bears the burden of showing that the failure was substantially justified or harmless.

*Yeti*, 259 F.3d at 1106-07. Cedars offers no justification, and the harm is plain. Expert discovery has closed, and Mr. Schratz has never disclosed any allocation opinion for Defendants to test.

Cedars' suggestion that Defendants "chose not to" depose Mr. Schratz is irrelevant. (Opp'n at 12-13.) A deposition cannot supply an opinion that was never disclosed. Cedars identifies no allocation analysis and says only that Mr. Schratz "will be prepared to testify on that topic at trial." (Opp'n at 13 n.6.) Rule 26(a)(2)(B) requires "a complete statement of all opinions the witness will express and the basis and reasons for them," and an opinion first offered at trial is the opposite. The only opinion Mr. Schratz has disclosed is a conclusion untethered to any time entry, rate, or allocation, and at least one court has discounted this witness's fee opinions for the same deficiency. *See Lopez v. San Francisco Unified Sch. Dist.*, 385 F. Supp. 2d 981, 992-93 (N.D. Cal. 2005). Cedars' proposal to defer the issue until trial approaches (Opp'n at 13) would reward that failure. The Court should exclude Mr. Schratz's fee opinion.

## VIII. THE MOTION IS PROPERLY BEFORE THE COURT

Cedars' procedural objection (Opp'n at 2) is puzzling given that the parties met and conferred, agreed on this very briefing schedule, and discussed that the November 11, 2026 hearing date is a federal holiday. Cedars then opposed on the merits under that agreed schedule and identifies no prejudice. The Court should not allow Cedars to escape a ruling on the merits through a technicality of its own making.

## CONCLUSION

Because each of Mr. Schratz's opinions fails Rule 702, Defendants respectfully request that the Court exclude his testimony in its entirety or, alternatively, exclude the opinions identified above, including his fee opinion, and condition any remaining claims-handling testimony on a coverage determination.

Dated: October 28, 2026

**DUANE MORRIS LLP**

By: */s/ Timothy J. Witczak*
Max H. Stern
Timothy J. Witczak

Dated: October 28, 2026

**KAUFMAN BORGEEST & RYAN**

By: /s/ Brian Margolies
Brian Margolies

*Attorneys for Defendant*
*Ironshore Specialty Insurance Company*

Dated: October 28, 2026

**DENTONS US LLP**

By: */s/ Natalie Limber*
Leanna M. Anderson
Natalie Limber
Andrew D. Telles Wyatt
Andrew Gerson
Dominick M. Jaffe
*Attorneys for Defendant*
*AIG Specialty Insurance Company*

## ATTESTATION PURSUANT TO LOCAL RULE 5-4.3.4(2)(I)

Pursuant to Local Rule 5-4.3.4(2)(i), I, Timothy J. Witczak, attest that all other signatories listed and on whose behalf the filing is submitted concur in this filing's content and have authorized this filing.

Dated: October 28, 2026

**DUANE MORRIS LLP**

By: */s/ Timothy J. Witczak*
Timothy J. Witczak