**PILLSBURY WINTHROP SHAW PITTMAN LLP**
KIRSTEN C. JACKSON (SBN 265952)
kirsten.jackson@pillsburylaw.com
RACHEL MITCHELL (SBN 344204)
rachel.mitchell@pillsburylaw.com
725 South Figueroa Street, 36th Floor
Los Angeles, California 90017-5524
Telephone: 213-488-7100 / Facsimile: 213-629-1033

**PILLSBURY WINTHROP SHAW PITTMAN LLP**
JAMES A. TABB (SBN 208188)
jimmy.tabb@pillsburylaw.com
11682 El Camino Real, Suite 200
San Diego, CA 92130
Telephone: 858-509-4000 / Facsimile: 858-509-4010

**THE VORA LAW FIRM, P.C.**
NILAY U. VORA (SBN 268339)
nvora@voralaw.com
JEFFREY A. ATTEBERRY (SBN 266728)
jatteberry@voralaw.com
L. DAVID RUSSELL (SBN 260043)
drussell@voralaw.com
201 Santa Monica Blvd, Ste 300
Santa Monica, CA 90401-2224
Telephone: 424-258-5190

*Attorneys for Plaintiff Cedars-Sinai Medical Center*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CEDARS-SINAI MEDICAL CENTER<br><br>Plaintiff,<br><br>v.<br><br>AIG SPECIALTY INSURANCE COMPANY and IRONSHORE SPECIALTY INSURANCE COMPANY<br><br>Defendants. | Case No. 2:24-cv-02543-SRM-RAO<br><br>**CEDARS' REPLY IN SUPPORT OF MOTION TO EXCLUDE, STRIKE, OR LIMIT THE OPINION TESTIMONY OF DESIGNATED EXPERT JOHN P. ROGERS**<br><br>Judge: Honorable Serena R. Murillo<br><br>Trial Date: January 26, 2027<br>Action Filed: February 9, 2024<br>Removed: March 28, 2024 |

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES .......... 1

I. INTRODUCTION .......... 1

II. DEFENDANTS FAIL TO CARRY THEIR RULE 702 BURDEN .......... 3

1. Defendants Cannot Spin Their Way Out Of Their Failure To Disclose Critical Information To Mr. Rogers .......... 3
2. Mr. Rogers' Lack of Experience Is Not a Virtue .......... 6
3. Mr. Rogers' Legal Conclusions And Speculation Are Not "Fair Play" That The Jury Can Manage .......... 8

III. CONCLUSION .......... 10

# TABLE OF AUTHORITIES

**Page(s)**

Cases

*Best Auto Repair, Inc. v. Travelers Cas. Ins. Co. of Am.*,
616 F. Supp. 3d 1016 (C.D. Cal. 2022) .... 9

*Cambridge Lane, LLC v. J-M Mfg. Co.*,
2025 WL 1843110 (C.D. Cal. Feb. 24, 2025) .... 6

*County of San Bernardino v. Ins. Co. of the State of Penn.*,
174 F.4th 597 (9th Cir. 2026) .... 4

*Downey Sav. & Loan Ass'n v. Ohio Cas. Ins. Co.*,
189 Cal. App. 3d 1072 (1987) .... 5

*Engilis v. Monsanto Co.*,
151 F.4th 1040 (9th Cir. 2025) .... 2, 10

*Fidelity Nat. Fin. Inc. v. Nat. Union Fire Ins. Co. of Pittsburgh, Pa*,
308 F.R.D. 649 (S.D. Cal. 2015) .... 8

*Gen. Elec. Co. v. Joiner*,
522 U.S. 136, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997) .... 9

*Gray v. Zurich Ins. Co.*,
65 Cal.2d 263 (1966) .... 8

*Hanson v. Lincoln Nat'l Life Ins. Co.*,
2021 WL 4555305 (C.D. Cal. Aug. 3, 2021) .... 4

*Harris v. Glen Falls Ins. Co.*,
6 Cal.3d 699 (1972) .... 8

*KB Home v. Illinois Union Ins. Co.*,
2023 WL 3432139 (C.D. Cal. Mar. 28, 2023) .... 7

*Keshish v. Allstate Ins. Co.*,
959 F. Supp. 2d 1226 (C.D. Cal. 2013) .... 8, 9

*Krause-Pettai v. Unilever United States, Inc.*,
696 F. Supp. 3d 916 (S.D. Cal. 2023) .... 9

*MacKinnon v. Truck Ins. Exch.*,
31 Cal.4th 635 (2003) ........ 8

*McGough v. Penzone*,
2021 WL 1575054 (D. Ariz. Apr. 22, 2021) ........ 6

*In re Mirena Ius Levonorgestrel-Related Prod. Liab. Litig. (No. II)*,
341 F.Supp.3d 213 (S.D.N.Y. 2018), *aff'd sub nom. In re Mirena IUS Levonorgestrel-Related Prod. Liab. Litig. (No. II)*, 982 F.3d 113 (2d Cir. 2020) ........ 6

*Morey v. Vannucci*,
64 Cal. App. 4th 904 (1998) ........ 4

*Pacific Gas & Elec. Co. v. G.W. Thomas Drayage & Rigging Co.*,
69 Cal.2d 33 (1968) ........ 4

*Qualcomm, Inc. v. Certain Underwriters at Lloyd's, London*,
161 Cal. App. 4th 184 (2008) ........ 9

*State Farm Mut. Auto. Ins. Co. v. Jacober*,
10 Cal.3d 193 (1973) ........ 8

Rules and Regulations

Federal Rules of Evidence
Rule 702 ........ 2

Other Authorities

29 Charles Alan Wright & Victor James Gold, *Federal Practice and Procedure* Section 6265.2 (2d ed., April 2016 update) ........ 6

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Defendants push numerous false narratives to try to salvage their designation of John Rogers as their purported bad faith expert. Three are discussed herein.

First, unable to rebut that they denied Mr. Rogers access to internal communications regarding the McGregor Memo (which detailed analytical steps for denying Covid-related claims), Defendants spin the communications as having "nothing to do with Cedars' claim." Opp. at 7. But Magistrate Judge Oliver already held that the Memo and related communications are "***responsive and relevant***." Dkt. No. 304 at 3 (emphasis added). And on that basis, she found "good cause" for "reopening the depositions of Shelly Ann Panton, Brendan Gray, and Elaina Charas" and for "permit[ting] Cedars to pursue additional depositions of Jack McGregor, Andrew Engel, and Anthony Iandoli." *Id*. Because Mr. Rogers has not reviewed these communications, the transcripts for the six depositions ordered by Judge Oliver (which Cedars will take as soon as this Court permits), or any of the other materials bearing on Defendants' claims handling and listed by category in Cedars' opening brief, his opinions regarding Defendants' claims handling necessarily are based on incomplete information—and thus speculative—requiring that they be excluded.

Second, Defendants falsely deride Cedars' experts as "professional witnesses who make a living testifying against insurance companies" while exalting Mr. Rogers' non-existent expert record as somehow superior. The premise of this attack is demonstrably false, because Cedars' experts routinely testify ***for insurance companies***, and indeed AIG and Ironshore affiliates have retained Cedars' expert James Schratz to be ***their*** claims handling expert. Moreover, while it is true that every expert must have a "first case," Mr. Rogers has demonstrated he is out of his depth in this complex, $100 million case, including by admitting he has no idea whether a hospital can satisfy granular information requests, and yet he is somehow confident that the level of granularity required by AIG was reasonable.

Third, Defendants ask this Court to abdicate its gatekeeping function that would otherwise bar expert testimony that flatly contradicts established California law, and testimony that unquestionably is sheer speculation. Jurors should not hear confusing, inadmissible, or speculative opinions. Mr. Rogers incorrectly testified that "academic and jurisdictional writings on the topic of exclusion interpretation" are "all over the map"—an indisputably false statement given that the California Supreme Court has long held that exclusions must be clear, express, and interpreted narrowly against the insurer. Mr. Rogers thus disqualifies himself by revealing a fundamental failure to appreciate the custom and practice of insurers writing policies for, and adjusting claims by, California insureds. Similarly, when Mr. Rogers testified that AIG's complex pooling arrangement with its affiliates (under which AIG retained zero risk) and retroactive reinsurance arrangements with Fortitude Re (which acquired FPCS, Cedars' purported third-party administrator for Cedars' claim) had no actual impact on the handling of Cedars' claim, he explicitly speculated—a categorical bar to expert testimony. The Court's gatekeeping function serves to prevent the jury from being confused by such unhelpful testimony, contrary to Defendants' assertion that everything is merely a challenge to weight. *See generally Engilis v. Monsanto Co.*, 151 F.4th 1040, 1049 (9th Cir. 2025) (discussing that, before the 2023 amendments to Rule 702, "many courts" treated "the sufficiency of an expert's basis, and the application of the expert's methodology" as "questions of weight and not admissibility," but following the amendments, it is clear the expert's proponent must first demonstrate it is "more likely than not" that each Rule 702 requirement is met, and only then do challenges go to weight (quoting Fed. R. Evid. 702 advisory committee's note to 2023 amendment)).

For these and other reasons discussed below, in Cedars' opening papers, and in any argument that may be heard by the Court, Cedars' motion to exclude, or in the alternative strike or limit, Mr. Rogers' testimony should be granted.

## II. DEFENDANTS FAIL TO CARRY THEIR RULE 702 BURDEN

### 1. <u>Defendants Cannot Spin Their Way Out Of Their Failure To Disclose Critical Information To Mr. Rogers</u>

The core of Mr. Rogers' opinion is that Defendants' "claim handling was at all times reasonable, appropriate, and consistent with insurance industry standards, customs, and practices." Ex. 1 at 5-6. Defendants do not refute that they failed to provide Mr. Rogers with a raft of documents and communications bearing on Defendants' claims handling, including such obviously relevant material as AIG's communications with its purported third-party administrator (FPCS), FPCS's claims-handling guidelines, FPCS's internal communications and claim files, and Ironshore's internal communications and claims-handling guidelines. *See* Dkt. No. 348 at 9-10 (listing categories of materials not given to Mr. Rogers).

Most egregious among these omissions is that AIG gave Mr. Rogers the McGregor Memo that AIG had belatedly disclosed to Cedars on the eve of the July 2022 discovery cutoff, but they did not give him any of the internal communications that they had also belatedly disclosed to Cedars, which give context to the Memo and confirm that it was provided to those within AIG who worked directly on Cedars' claim, including Brendan Gray and his supervisor, Anthony Iandoli (who later reported directly to Mr. McGregor when Mr. Gray and Mr. McGregor were transferred by AIG to FPCS following Fortitude Re's acquisition of FPCS).

Defendants try to sweep the McGregor Memo and related correspondence under the rug as purportedly "having nothing to do with Cedars' claim" and instead relating only to a harmless "whitepaper" setting forth "hypothetical analysis about a hypothetical claim under a hypothetical policy." Opp. at 7, 14. But Mr. Rogers admitted in his deposition that claims handling guidelines themselves "address hypothetical issues unrelated to any specific claim" (Ex. 5 at 24:14-24), blurring any distinction he attempts to draw between what he calls a "whitepaper" and what he admits constitutes express guidance for claims handlers. Moreover, and critically,

Judge Oliver has reviewed all of these documents and communications and found them to be "***responsive and relevant***" to Cedars' claim—so much so that she ordered six additional depositions are warranted. Dkt. No. 304 at 3 (emphasis added).[1]

The communications Defendants withheld from Mr. Rogers demonstrate a "coordinated effort" within AIG in addressing Covid-related claims. Ex. 7. They further confirm that information in the McGregor Memo came from Ms. Charas and Mr. Iandoli at AIG as a result of a "Jack project" for them. Ex. 8. And they confirm Mr. McGregor ([redacted]) sent his Memo directly to Ms. Charas, who then forwarded it to Mr. Iandoli ([redacted]), who then forwarded it to an AIG team selected to handle Covid-related claims reinsured by Fortitude Re, including Mr. Gray who was directly involved in handling Cedars' claim. Exs. 9-10. As Mr. Rogers admitted, "in claim handling . . . there is applied a presumption in favor of coverage." Ex. 4 at 62:3-12. Whether this presumption was followed in this case is critically important to the reasonableness of

[1] Defendants'/Mr. Rogers' persistent effort to have the Court disregard extrinsic evidence—*e.g.*, the McGregor Memo and related correspondence, and marketing materials through which AIG sold Cedars the Policy (discussed in Mr. Rogers' Rebuttal Report, Ex. 2)—defies Ninth Circuit and California Supreme Court precedent. *See County of San Bernardino v. Ins. Co. of the State of Penn*., 174 F.4th 597, 605 (9th Cir. 2026) ("it is reversible error for a trial court to refuse to consider such extrinsic evidence"); *Hanson v. Lincoln Nat'l Life Ins. Co*., 2021 WL 4555305, at *5 (C.D. Cal. Aug. 3, 2021) (noting coverage cases from this district have "reject[ed] [the] argument that Plaintiff is prohibited from submitting extrinsic evidence"); *Pacific Gas & Elec. Co. v. G.W. Thomas Drayage & Rigging Co*., 69 Cal.2d 33, 37 (1968) ("[T]he test of admissibility of extrinsic evidence to explain the meaning of a written instrument is not whether it appears to the court to be plain and unambiguous on its face, but whether the offered evidence is relevant to prove a meaning to which the language of the instrument is reasonably susceptible."); *Morey v. Vannucci*, 64 Cal. App. 4th 904, 912 (1998) ("Even if a contract appears unambiguous on its face, a latent ambiguity may be exposed by extrinsic evidence which reveals more than one possible meaning which the language of the contract is yet reasonably susceptible."). Indeed, the California legislature requires that Courts consider marketing materials. *See* Ins. Code § 790(h)(7) (it is an unfair practice for an insurer to "attempt[t] to settle a claim by an insured for less than the amount to which a reasonable person would have believed he or she was entitled by reference to written or printed advertising material accompanying [an] application.").

Defendants' claims handling—but Mr. Rogers dismissed out of hand the possibility that those who denied Cedars' claim used the Memo to pre-judge Cedars' claim. It is inexcusable that Defendants deprived Mr. Rogers of these critical communications. Without them (and the deposition testimony that Judge Oliver has ordered), Mr. Rogers cannot possibly give reliable opinions essentially blessing Defendants' claims handling. Instead, he gives uninformed and speculative "clean bills of health" based on only a superficial understanding of the subset of documents provided to him.

Defendants admit that "Rogers analyzed these documents ***on their faces*** and opined (and testified) he saw nothing in either document showing any connection to [AIG's] handling of any claims, let alone Cedars' specific claim." Opp. at 21 (emphasis added). That is the problem. Before opining that the McGregor Memo was a "whitepaper" and "not a roadmap for denying COVID claims," Mr. Rogers did not review any documents or communications regarding the drafting, transmission, or discussion of the Memo or its use in adjusting Cedars' claim. *See* Ex. 3 at Op. 3; Ex. 5 at 43:9-46:19, 64:5-67:5. To the contrary, he took at face value a [redacted], ignoring that the stated purpose of the Memo's 9-step [redacted] was to support [redacted] for the retroactive reinsurer, Fortitude Re, and that each step represented an opportunity to deny the claim. Ex. 9 at Memo p. 4; *see, e.g.*, *id.* at Step 1 [redacted], Step 3 [redacted], Step 4 [redacted], Step 6 [redacted]; *see generally Downey Sav. & Loan Ass'n v. Ohio Cas. Ins. Co.*, 189 Cal. App. 3d 1072, 1097-99 (1987) (insurer was subject to a finding of bad faith with punitive damages where it "instruct[ed] its

claims adjusters to keep defenses in the forefront of the investigation").

An expert's failure to "consider all of the critical record evidence" is a "fundamental methodological flaw," and "when 'an expert ignores evidence that is highly relevant to his conclusion, contrary to his own stated methodology, exclusion of the expert's testimony is warranted.'" *Cambridge Lane, LLC v. J-M Mfg. Co.*, 2025 WL 1843110, at *9 (C.D. Cal. Feb. 24, 2025) (quoting *In re Mirena Ius Levonorgestrel-Related Prod. Liab. Litig. (No. II)*, 341 F.Supp.3d 213, 242 (S.D.N.Y. 2018), *aff'd sub nom. In re Mirena IUS Levonorgestrel-Related Prod. Liab. Litig. (No. II)*, 982 F.3d 113 (2d Cir. 2020)). Moreover, expert opinions do "not help [jurors] if [they] simply assume[ ] crucial facts that are in dispute," and an expert who does so "would instead be acting as an additional juror." *McGough v. Penzone*, 2021 WL 1575054, at *3-4 (D. Ariz. Apr. 22, 2021) (quoting 29 Charles Alan Wright & Victor James Gold, *Federal Practice and Procedure* § 6265.2 (2d ed., April 2016 update)). Mr. Rogers' opinions do not take into account critical record evidence that Judge Oliver deemed "responsive and relevant" nor deposition testimony ordered by Judge Oliver (indeed, Mr. Rogers was not even aware of the Order), and they are based on Mr. Rogers simply taking at face value a self-serving disclaimer in the McGregor Memo. As such, his opinions are unreliable, speculative, and must be excluded. *See Cambridge Lane*, 2025 WL 1843110, at *11 ("while [the expert] may end up at the same conclusions after considering, analyzing, and in some cases explaining away the record evidence, to clear the Daubert gatekeeping standard, the expert testimony must at least so engage in that analysis.")

**2. <u>Mr. Rogers' Lack of Experience Is Not a Virtue</u>**

Adopting the adage that the best defense is to go on the offensive, Defendants deride Cedars' experts as "professional witnesses who make a living testifying against insurance companies." Opp. at 9-10. Their attack misses the mark. As detailed in Cedars' opposition to Defendants' motion to exclude James Schratz, Cedars' experts have deep experience representing ***both*** policyholders ***and insurance***

***companies***. Dkt. No. 355 at 5-6. Indeed, after an AIG affiliate failed to disqualify Mr. Schratz as a claims handling expert, AIG and Ironshore affiliates retained Mr. Schratz to be ***their*** expert. *Id.* Mr. Rogers can claim no such bipartisan legacy—he has never been an expert, and he has never done any work for policyholders.

While it is true that every expert must have a "first case," Mr. Rogers has demonstrated that he is out of his depth in this complex, $100 million case.[2] For example, he lacks familiarity with healthcare standards and gives no consideration to them. *See KB Home v. Illinois Union Ins. Co.*, 2023 WL 3432139, at *3 (C.D. Cal. Mar. 28, 2023) (excluding expert testimony regarding "custom and practice, industry standards and norms" in construction insurance dispute when expert had "no specialized knowledge of the construction industry"). To opine that AIG's level of required claim granularity was reasonable, Mr. Rogers would at least need to understand whether it is possible for a hospital in the middle of pandemic to provide the granularity being requested. But he has no interest in knowing the answer to that question and summarily rejects Cedars' representations—as an industry insider who has never performed any work for policyholders, he sees things only from the insurer's perspective. And when asked whether healthcare industry customs, standards and practices—*whatever* they happened to be—were "at all relevant to any analysis of whether or not the questions asked by AIG [we]re reasonable under the circumstances," he responded, "the best I can say is maybe." Ex. 4 at 107:5-12.

This is not reliable expertise that will assist the jury. It is conjecture from a retired insurance industry executive, hired by the law firm he used to employ as outside counsel, to try to excuse the bad faith behavior of an insurance company

---

[2] Defendants do not explain why they designated only one expert on the myriad aspects of claims handling and on AIG's complex web of run-off transactions, nor why they did not better prepare him by giving him all relevant materials to consider. In contrast, Cedars retained three highly-regarded, court-approved experts to offer opinions within their respective wheelhouses and provided them with the materials they need to do their job. Defendants cannot bring in otherwise excludable expert testimony by complaining that, without it, there will be an imbalance in witnesses.

demanding unattainable levels of claim granularity in the middle of a pandemic.

### 3. Mr. Rogers' Legal Conclusions And Speculation Are Not "Fair Play" That The Jury Can Manage

Mr. Rogers lacks familiarity with the relevant California standards, and his opinions would confuse, rather than assist, a jury attempting to apply those standards. California has specific requirements for claims handling, and while insurance industry custom and practice is certainly relevant and can be admitted through expert testimony, an expert cannot "provide opinions that contradict[] California law." *Fidelity Nat. Fin. Inc. v. Nat. Union Fire Ins. Co. of Pittsburgh, Pa*, 308 F.R.D. 649, 651 (S.D. Cal. 2015). But that is what is at risk when Mr. Rogers claims that "academic and jurisdictional writings on the topic of exclusion interpretation" are "all over the map," when in fact the California Supreme Court has long held that exclusions must be clear and express and interpreted narrowly against the insurer. *See, e.g., Gray v. Zurich Ins. Co.*, 65 Cal.2d 263, 271 (1966) ("any exception to the performance of the basic underlying obligation must be so stated as clearly to apprise the insured of its effect"); *Harris v. Glen Falls Ins. Co.*, 6 Cal.3d 699, 701 (1972) ("the burden rests upon the insurer to phrase exceptions and exclusions in clear and unmistakable language"); *State Farm Mut. Auto. Ins. Co. v. Jacober*, 10 Cal.3d 193, 201 (1973) ("The exclusionary clause 'must be conspicuous, plain and clear.'"); *MacKinnon v. Truck Ins. Exch.*, 31 Cal.4th 635, 648 (2003) ("[I]nsurance coverage is interpreted broadly so as to afford the greatest possible protection to the insured, [whereas] ... exclusionary clauses are interpreted narrowly against the insurer").

Even when Mr. Rogers' opinions do not expressly contradict California law, many are still stated as improper legal conclusions. For example, he broadly opines that Defendants' claim handling was "at all times reasonable." Ex. 1 at 6. While an expert may testify whether specific conduct conformed to an identified industry practice, he does not explain *how* or *why* AIG's information requests were reasonable in the context of Cedars' claim. *See Keshish v. Allstate Ins. Co.*, 959 F. Supp. 2d

1226, 1239 (C.D. Cal. 2013) ("Absent additional facts, therefore, [the expert's] opinion is too conclusory to raise triable issues of fact."). His conclusion is untethered to any standard and just states the result he believes the jury should reach. *See Krause-Pettai v. Unilever United States, Inc.*, 696 F. Supp. 3d 916, 927 (S.D. Cal. 2023) (a court need not "admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert") (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997)); *Keshish*, 959 F. Supp. 2d at 1240-41 ("Because he cites no facts supporting the opinion, [expert's] conclusion that [insurer] 'fail[ed] to try in good faith to reach an agreed scope of damages' is simply a legal conclusion and does not suffice to raise triable issues of fact.").

In other instances, Defendants attempt to disguise legal conclusions as supposed "factually correct statements." Opp. at 19. But this attempt also misses the mark. For example, the assertion that AIG's "policy has not yet exhausted" because AIG has not paid its policy limits is imbued with an improper legal conclusion that payment by AIG is required for exhaustion (as opposed to Cedars simply incurring costs in Ironshore's layer). *See Qualcomm, Inc. v. Certain Underwriters at Lloyd's, London*, 161 Cal. App. 4th 184, 194 (2008) (interpreting text of insurance policy to determine exhaustion requirement). As another example, Defendants attempt to portray Mr. Rogers as merely opining that the level of claim granularity required by AIG was consistent with custom and practice, when in fact he testified that "***the policy language*** justifies the level of specificity that was required by AIG's questions to Cedars." Ex. 4 at 102:8-11 (emphasis added); *see generally Best Auto Repair, Inc. v. Travelers Cas. Ins. Co. of Am.*, 616 F. Supp. 3d 1016, 1020 (C.D. Cal. 2022) ("Under California law, the interpretation of an insurance policy is a question of law").[3] The inappropriateness of such opinions does not depend on whether the

[3] Having not been an expert, Mr. Rogers may not recognize when he is giving a legal opinion. In deposition, Mr. Rogers confusingly asserted he was "looking at" the language of the policy but "not interpreting that language." Ex. 4 at 80:2-9.

opinions are correct—because they are legal conclusions, they must be excluded.

Still other opinions by Mr. Rogers are sheer speculation that Defendants insist should be left to the jury to manage. As explained in Cedars' opposition to the motion to exclude Jonathan Terrell, Mr. Terrell properly opined, based on his deep industry experience, that AIG's web of pooling agreements, retroactive reinsurance, and offloading of claims handling to an entity (FPCS) controlled by the reinsurer (Fortitude Re) creates *structural incentives* to deny claims in bad faith beyond those that exist in traditional arrangements where the insurer retains the risk and performs the claims handling. Dkt. No. 363 at 20-21. He expressly does not opine that these structural incentives actually incentivized any person or entity to deny Cedars' claim or otherwise affected the handling of Cedars' claim—he leaves that ultimate question to the jury. *Id.* Mr. Rogers, on the other hand, seeks to usurp the role of the jury by declaring an ultimate conclusion: that "[n]othing about the Pooling Agreement impacted the handling of Cedars' claim." Ex. 3 at 2. He makes this pronouncement without knowing all of the facts surrounding AIG's claims handling (as discussed), and while admitting [redacted] Ex. 6 at 76:20-77:2.

All such legal conclusions and speculations should be excluded, not left for the jury to manage. *See Engilis*, 151 F.4th at 1050 (the court "cannot abdicate its role as gatekeeper" nor "delegat[e] that role to the jury").

## III. CONCLUSION

Mr. Rogers' opinions are built on incomplete information and reflect legal conclusions and speculation that will confuse the jury. Cedars' Motion to exclude, strike, or limit his opinion testimony should be granted.

Dated: October 28, 2026 PILLSBURY WINTHROP SHAW PITTMAN LLP

By: */s/ Kirsten C. Jackson*
Kirsten C. Jackson
*Attorneys for Plaintiff Cedars-Sinai Medical Center*

## WORD CERTIFICATION

The undersigned, counsel of record for Plaintiff Cedars Medical Center, certifies that this brief contains 3,584 words, which complies with the word limit of L.R. 11-6.1.

Dated: October 28, 2026 PILLSBURY WINTHROP SHAW PITTMAN LLP

By: */s/ Kirsten C. Jackson*
Kirsten C. Jackson
*Attorneys for Plaintiff*
*Cedars Medical Center*